**In re DEVON ENERGY CORPORA-TION, Devon Energy International, Ltd., and Texneft, Inc., Relators.**

No. 01–09–00174–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2009.

Gwen Samora, Karl S. Stern, Vinson & Elkins LLP, Bradley Jason Benoit, Bracewell & Giuliani LLP, Houston, TX, for Appellant.

Ralph McBride, Bracewell & Patterson, Bryan Scott Dumesnil, Jeffrey L. Oldham, Bracewell & Giuliani, LLP, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, KEYES, and HIGLEY.

## OPINION

TERRY JENNINGS, Justice.

By a petition for writ of mandamus, Devon Energy Corporation, Devon Energy International, Ltd., and Texneft, Inc. (collectively, the "Devon defendants") challenge the trial court's denial of their motion to stay litigation. In two issues, the Devon defendants contend that litigation in the underlying suit must be abated pending resolution of parallel arbitration involving similar issues and that they have no adequate remedy by appeal. We conditionally grant mandamus relief.

## BACKGROUND

In 1989, real parties in interest, Robert Ferris and Donald Ellison, negotiated with the Oil Ministry of the former U.S.S.R. for the formation of a Russian joint venture (known as ZAO Tatex and referred to herein as "Tatex") to be funded by investors recruited by Ferris and Ellison. Ferris and Ellison recruited investors Global Natural Resources, Inc. and Global Natural Resources Corporation of Nevada, the

predecessors-in-interest of the Devon defendants. Defendant Texneft, Inc. was formed as the United States partner in the Tatex joint venture.

Two contracts govern the parties' relationship in the Russian joint venture. The first contract, dated May 15, 1990, between the Devon defendants, Ferris and Ellison, is entitled "Agreement Among U.S. Parties" (the "Original Agreement") and provides that: (1) Devon Energy Corporation and Devon Energy International, Ltd. (collectively, "Devon") would supply Texneft with the required capital; (2) Devon would recoup its capital contributions through net proceeds generated by Texneft; (3) once Devon fully recouped its contributed capital (referred to herein as "payout"), it would thereafter own 80% of Texneft while Ellison and Ferris would each receive vested 10% interests in Texneft. The Original Agreement did not contain an arbitration clause.

In 1994, the parties executed the second contract, titled "Termination Agreement," which ended Ellison's role in the Original Agreement and transferred his rights regarding his Texneft interest to Devon. Under the Termination Agreement, Ellison was to receive certain rights derived from the same payout from which his and Ferris's rights were activated under the Original Agreement. Specifically, upon payout, Ellison was to receive a vested right to 5% of the dividends that Devon receives from current distributions of Texneft's net profit, subject to certain reserves. Both Ferris's and Ellison's rights to distributions are based on the same payout, which is determined by the same receipt and payment of funds by Devon and its appropriate maintenance of the payout account. Unlike the Original Agreement, the Termination Agreement contains an arbitration clause, which provides, in part:

**Governing Law and Arbitration:** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. All disputes arising out of or relating to this Agreement or the parties' relationship shall be resolved by arbitration in Houston, Texas under the rules of the International Centers for Arbitration (the "ICA").

On February 11, 2008, Ferris and Ellison sued the Devon defendants in Texas state district court over the timing of the payout, contending that the Devon defendants breached their contract by (1) failing to evidence alleged advances or payments from Devon to Texneft by issuance of preferred stock or notes of Texneft; (2) failing to properly account for payments made to Texneft; (3) failing to properly account for amounts paid by Texneft; (4) failing to contribute to the capital of Texneft all notes, preferred stock, or other securities of Texneft senior to Texneft's common stock after receiving a sum equal to the Devon defendants' entire investment in Texneft; (5) failing to make current distribution of Texneft's profits; and (6) failing to properly account for, and provide Ferris with, the value paid for Texneft in mergers. In their original petition, Ferris and Ellison also requested a declaration that payout "has been reached."

The Devon defendants removed the suit to federal court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. § 205 (2006). After removal, Ellison agreed to arbitrate his claims. Before the federal court, Ferris moved to remand his case back to the state district court. The Devon defendants then moved to stay Ferris's federal litigation pending resolution of Ellison's arbitration. The federal court remanded Ferris's claims back to the state district court, but denied the Devon defendants' motion to stay for lack of subject

matter jurisdiction. Also, the federal court concluded that it lacked jurisdiction because Ferris's claims did not relate to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. § 205 (2006). However, the federal court reminded the Devon defendants that they could "move for a stay of Ferris's claims in the state court."

After remand, the Devon defendants moved for a stay of Ferris's litigation in the trial court pursuant to the Federal Arbitration Act ("FAA"), or, alternatively, the Texas General Arbitration Act ("TAA"). 9 U.S.C. §§ 1–16 (2006); TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005). The trial court denied the motion to stay.

### FAA and TAA

■■■ As a threshold matter, we must determine whether the FAA, or the TAA, or both, govern this suit. The FAA preempts all otherwise applicable state laws, including the TAA, under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI; *see Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). The FAA applies to contracts involving interstate commerce. 9 U.S.C. § 2 (2006). It requires only that interstate commerce be involved or affected. *Allied–Bruce*, 513 U.S. at 277–81, 115 S.Ct. at 841–43. If an arbitration agreement does not specify whether the FAA or the TAA applies, but states that it is governed by the laws of Texas, both the FAA and the TAA apply unless the agreement specifically excludes federal law. *See In re L &*

*L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex.1999) (orig. proceeding). "For the FAA to preempt the TAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage ... or (2) the TAA has imposed an enforceability requirement not found in the FAA." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006) (orig. proceeding). The TAA does not provide for interlocutory appeal on a denial of a motion to stay litigation.[2] *See Home Club, Inc. v. Barlow*, 818 S.W.2d 192, 192 (Tex.App.-San Antonio 1991, no writ). If the FAA applies, mandamus is proper to address a failure to stay litigation. *See In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 188 (Tex.2007) ("[M]andamus relief is appropriate if the trial court abused its discretion in failing to stay the litigation and compel arbitration."); *see also Zuffa, LLC v. HDNet MMA 2008 LLC*, 262 S.W.3d 446, 449 (Tex.App.-Dallas 2008, no pet.) ("A party seeking relief pursuant to the FAA from the trial court's denial of arbitration or a stay of litigation must file a petition for writ of mandamus.").

■■ Here, both the FAA and TAA apply because the arbitration agreement does not specify which governs it but does provide that it is governed by the laws of Texas, and it does not specifically exclude the FAA. *See In re L & L Kempwood Assocs.*, 9 S.W.3d at 127–28. Additionally, it is undisputed that the contract involves interstate commerce. *Allied–Bruce*, 513 U.S. at 277–81, 115 S.Ct. at 841–43. The Devon defendants moved to stay litigation before the trial court pursuant to the FAA, and, alternatively, the TAA. Mandamus is

---

2. The TAA provides for interlocutory appeals of the following orders: "(1) denying an application to compel arbitration made under Section 171.021; (2) granting an application to stay arbitration made under Section 171.023; (3) confirming or denying confirmation of an award; (4) modifying or correcting an award; or (5) vacating an award without directing a hearing." TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a) (Vernon 2008).

the proper means to address a trial court's failure to stay litigation. *See In re Merrill Lynch*, 235 S.W.3d at 188.

## Stay of Litigation

The Devon defendants argue that the litigation must be abated pending resolution of the arbitration because the arbitration is a parallel proceeding involving similar issues. Ferris argues that the parallel litigation should not be abated because he was not a signatory to the arbitration agreement and did not wish for the litigation to be stayed.

Section 3 of the FAA provides:

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006). Here, the parties do not dispute the existence of the written arbitration agreement between Ellison and the Devon defendants, or that Ferris was not a party to the arbitration agreement. ▮▮▮▮ Generally, the mandatory stay applies only to parties to an arbitration agreement. *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir.2001) (per curiam). However, a non-signatory party's claims may be subject to the mandatory stay if the "issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration." *Zuffa*, 262 S.W.3d at 450 (citing

*Adams*, 237 F.3d at 540); *see also In re Merrill Lynch*, 235 S.W.3d at 195 ("Thus, when an issue is pending in both arbitration and litigation, the Federal Arbitration Act generally requires the arbitration to go forward first; arbitration should be given priority to the extent it is likely to resolve issues material to [the] lawsuit."). Courts must focus on preserving the right to meaningful arbitration rather than addressing potential harm to the rights of a non-signatory. *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir.2004). "Because the focus is the potential effect of the litigation on the signatory party's right to a meaningful arbitration, the non-signatory's status as a plaintiff or a defendant in the litigation is not dispositive." *Zuffa*, 262 S.W.3d at 450 (citing *In re Merrill Lynch*, 235 S.W.3d at 196). The FAA's mandatory stay applies to a non-signatory to an arbitration agreement if (1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are "inherently inseparable," and (3) the litigation has a "critical impact" on the arbitration. *Waste Mgmt.*, 372 F.3d at 343.

▮▮▮▮ Although decisions of the federal courts of appeals do not bind Texas courts, we receive them "with respectful consideration." *Hassan v. Greater Houston Transp. Co.*, 237 S.W.3d 727, 731 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (citing *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 672 n. 5 (Tex.App.-Austin 1990, writ denied)). Texas state courts interpret federal law independently, though "we typically seek guidance from among the decisions of the lower federal courts." *Id.* (citing *Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496, 502 (Tex. App.-Houston [1st Dist.] 1994)), *aff'd*, 920 S.W.2d 274 (Tex.1996); *see also Owsley v. Peyton*, 352 F.2d 804, 805 (4th Cir.1965)

("Though state courts may for policy reasons follow the decisions of the [federal] Court of Appeals whose circuit includes their state, . . . they are not obliged to do so."). State courts have the authority to render binding decisions based on their interpretation of federal law unless a federal statute provides for exclusive federal jurisdiction. *ASARCO v. Kadish,* 490 U.S. 605, 617, 109 S.Ct. 2037, 2045, 104 L.Ed.2d 696 (1989).

■ Here, Ellison's arbitration and Ferris's litigation involve the same operative facts, and the claims asserted in the arbitration and litigation are "inherently inseparable." *See Waste Mgmt.,* 372 F.3d at 343. For the first four years of the Russian venture, Ferris and Ellison were parties to the Original Agreement. Although Ellison signed the Termination Agreement, the Termination Agreement tied Ferris's rights to the same payout event. In fact, one of Ellison's claims in the arbitration is that the Termination Agreement should be rescinded, permitting him to make his claims under the Original Agreement. Ferris's litigation and Ellison's arbitration seek to establish the same core issue, that is, the time of payout. The claims are based on the same investment in and the same distributions from the same joint venture. Ferris and Ellison filed their claims as co-plaintiffs, allege nearly identical breach of contract claims, and seek one shared set of declarations, including a shared declaration that payout has been reached. Ellison then asserted these same claims in arbitration. Moreover, if not stayed, Ferris's litigation

will critically impact the Devon defendants' arbitration with Ellison. *See id.* Specifically, the litigation could subvert the Devon defendants' right to a meaningful arbitration with Ellison by deciding issues subject to the arbitration. *See Zuffa,* 262 S.W.3d at 451. Accordingly, we hold that the litigation between Ferris and the Devon defendants must be abated pending resolution of the arbitration proceeding between Ellison and the Devon defendants.

Ferris argues that Texas state and federal caselaw unfavorable to his position is distinguishable because he, unlike the non-signatory in many of the relevant cases, is opposed to a stay of litigation.[3] Indeed, the non-signatory in *In re Merrill Lynch* was the movant to stay litigation, as was the non-signatory in *Waste Management. See In re Merrill Lynch,* 235 S.W.3d at 195; *see Waste Mgmt.,* 372 F.3d at 340. To support his argument, Ferris cites federal cases from the United States Courts of Appeals of the Third and Seventh Circuits that prohibit application of section three of the FAA to non-signatories opposed to its application. *See Mendez v. Puerto Rican Int'l Cos.,* 553 F.3d 709, 711 (3d Cir.2009); *see IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 529 (7th Cir.1996).

However, a non-signatory's opposition to a stay of litigation did not persuade the Dallas Court of Appeals to alter its priority of preserving the integrity of the arbitration process over the potential harm to a non-signatory's interests. *See Zuffa,* 262 S.W.3d at 450–51. In *Zuffa,* HDNet MMA

---

3. Ferris also asserts that his arguments to this court are "confirm[ed]" by the United State Supreme Court's opinion in *Arthur Andersen LLP v. Carlisle,* ── U.S. ──, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). However, the Supreme Court in *Carlisle* held that a litigant who was not a party to an arbitration agreement may invoke section 3 if relevant state contract law allows him to enforce the agreement. 129 S.Ct. at 1902. Thus, our holding that the litigation between Ferris and the Devon defendants must be abated pending resolution of the arbitration proceeding between Ellison and the Devon defendants is not inconsistent with *Carlisle.* 129 S.Ct. at 1903.

2008 ("HDNet") sought a declaratory judgment from the trial court regarding the earliest eligibility of a professional fighter, Randy Couture, to sign a fight contract with HDNet. *Id.* at 448. At the time, Couture was signed with Zuffa, LLC ("Zuffa"). Zuffa filed for arbitration with Couture in Nevada, then moved to stay the litigation in Texas. *Id.* at 448–49. The trial court denied the motion to stay, and Zuffa petitioned for a writ of mandamus. *Id.* at 449. Before the appellate court, HDNet argued that a stay of litigation was discretionary rather than mandatory because it was a "non-signatory plaintiff that ha[d] not sought arbitration." *Id.* at 450. However, citing precedent from the United States Court of Appeals for the Fifth Circuit, the Dallas Court of Appeals determined that a signatory's right to meaningful arbitration should be prioritized over the potential harm to a non-signatory's interests. *Id.* (citing *Waste Mgmt.,* 372 F.3d at 343).

Additionally, although *In re Merrill Lynch* does not involve a non-signatory opposed to a stay of litigation, the Texas Supreme Court explained that its opinion in *In re Kellogg Brown & Root* illustrates "one of many circumstances in which litigation must be abated to ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation." *In re Merrill Lynch,* 235 S.W.3d at 196 (citing *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732 (Tex.2005)). As in the instant case, *In re Kellogg Brown & Root* involved application of a stay of litigation against a non-signatory plaintiff. 166 S.W.3d at 736.

Our focus concerns the preservation of meaningful arbitration, not the potential harm to the interests of a nonsignatory. *See Waste Mgmt., Inc.,* 372 F.3d at 343; *In re Merrill Lynch,* 235 S.W.3d at 195–96; *In re Kellogg Brown & Root, Inc.,* 166

S.W.3d at 736; *Zuffa,* 262 S.W.3d at 450. Because Ferris's litigation could jeopardize the integrity of the parallel arbitration, we hold that the trial court abused its discretion in denying the Devon defendants' motion to stay the litigation. Moreover, because allowing the litigation to proceed will critically impact the Devon defendants' arbitration with Ellison, the Devon defendants do not have an adequate remedy by appeal. *See In re Merrill Lynch,* 235 S.W.3d at 195 ("Without such a stay, arbitration would no longer be the 'rapid, inexpensive alternative to traditional litigation' it was intended to be. . . .").

## CONCLUSION

We conditionally grant the petition for writ of mandamus, direct the trial court to vacate its order denying the Devon defendants' motion to stay, and direct the trial court to enter an order staying Ferris's litigation pending the outcome of the Devon defendants' arbitration with Ellison. The writ will issue only if the trial court fails to comply. All pending motions are overruled as moot.