Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00463-CV

———————————

## IN RE HOUSTON PROGRESSIVE RADIOLOGY ASSOCIATES, PLLC, RODOLFO L. GARCIA, AND BRANDON C. STROH, Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

*and*

———————————

## NO. 01-14-00467-CV

———————————

## HOUSTON PROGRESSIVE RADIOLOGY ASSOCIATES, PLLC, RODOLFO L. GARCIA, AND BRANDON C. STROH, Appellants

v.

## STEPHEN B. LEE, M.D., P.A., DEAN PAUL CHAUVIN, JR., M.D., P.A., AND MICHAEL NGUYEN, M.D., Appellees

---

**O P I N I O N**

Two professional associations, former members of a medical practice, sued the practice and two doctors associated with it, alleging breaches of contract, breach of fiduciary duty, and fraud in connection with the sale of the practice. Another doctor employed by the practice also sued for breach of his employment agreement. The practice and defendant-doctors filed a plea in abatement and motion to dismiss in favor of arbitration, seeking to compel arbitration based on employment agreements signed by the two doctors who controlled the plaintiff professional associations. The trial court denied the defendants' plea and motion, and they filed both an interlocutory appeal and petition for writ of mandamus.[1] We reverse the order of the trial court refusing to compel arbitration, remand the case to the trial court for entry of an order compelling arbitration and staying the litigation, and deny the mandamus petition as moot.

---

[1]  The underlying case is *Stephen B. Lee, MD., P.A. et al v. Rodolfo L. Garcia, et al*, cause number 2014-12279, pending in the 80th District Court of Harris County, Texas, the Hon. Larry Weiman presiding.

## Background

### *Relationship of the parties*

Two doctors, Rodolfo L. Garcia and Brandon C. Stroh, held ownership interests in a radiology practice, Houston Progressive Radiology Associates, PLLC. Each owned his respective interest through a professional association that he controlled. Over time, additional members joined the practice, including Stephen B. Lee, M.D., P.A., and Dean Paul Chauvin, M.D., P.A. These professional associations were owned and controlled by Drs. Lee and Chauvin, respectively.[2] Drs. Lee and Chauvin participated in the practice, but were employees of their respective professional associations.

Another doctor, Michael Nguyen, joined the practice as an employee, rather than as a member. Dr. Nguyen's employment agreement gave HPRA discretion to offer Nguyen the opportunity to become a member of HPRA:

> [HPRA] shall have the option, in its sole discretion, of offering to [Dr. Nguyen] the opportunity to purchase that number of Class A Company Units of [HPRA] equal to the number held by an existing member . . . and to become a member of [HPRA]. Such offer, if made, will be conditioned upon [Dr. Nguyen] (and his . . . spouse, as applicable) executing the Company Agreement of [HPRA] then in effect . . . . [HPRA] shall notify [Dr. Nguyen] in writing at least ninety (90) days prior to the end of the first year of employment, whether or not it wishes to exercise such option and extend such an offer to [Dr. Nguyen].

---

[2]  For clarity, we will refer to the individuals as Dr. Lee and Dr. Chauvin and to their respective professional associations as Lee P.A. and Chauvin P.A.

HPRA never voted to extend such an offer to Dr. Nguyen, and, according to Dr. Nguyen, HPRA did not timely notify him of its decision not to do so.

### *Drs. Lee and Chauvin withdraw from HPRA*

In 2013, Drs. Lee and Chauvin withdrew their respective professional associations from HPRA and became employees of HPRA. Drs. Lee and Chauvin each executed two documents evidencing these transactions. The Membership Interest Transfer and General Release agreements set forth the terms of Lee P.A.'s and Chauvin P.A.'s respective sales of their ownership interests in HPRA to the practice. The Physician Employment Agreements set forth the terms of Dr. Lee's and Dr. Chauvin's employment with HPRA. All of these documents bear effective dates of May 1, 2013, and all of them were drafted by Jackson Walker, L.L.P., counsel for HPRA.

Each of the Membership Interest Transfer and General Release agreements required the signatory doctor to sign a Physician Employment Agreement and refers to the transaction as a "transition from being a Member . . . to an employee." Specifically, each Membership Interest Transfer and General Release agreement contains the following provisions:

> WHEREAS, Employee [defined as the individual doctor] has expressed a willingness to continue as an employee of [HPRA], under terms reflected in that certain Physician Employment Contract of even date herewith, . . .
>
> . . . .

4

5. <u>Employee Retention Payments.</u> *As consideration for Employee [defined as the individual doctor] agreeing to transition from being a Member of [HPRA] to an Employee*, and to continue providing professional services to [HPRA] . . .[3] [HPRA] agrees to pay Employee . . . bonus payments . . . . Other than the amounts described in Sections 1 and 5 of this Transfer Agreement, and *any amounts negotiated by the parties pursuant to a separate Physician Employment Contract between Employee and [HPRA]*, Employee is not entitled to any further payments from [HPRA] . . . .

. . . .

9. <u>Exception to Release.</u> Notwithstanding any other provision of this Transfer Agreement, none of the parties releases any other party from any claims or potential claims related to:

. . . .

f. Any breach of a separately executed Employment Agreement.

(italics added). Each transfer agreement also referred to the possibility that HPRA would be the target of a sale or investment, clarified that the professional association and doctor would have no interest in such a transaction, and specified that any such transaction "would have no effect . . . on Employee's employment with [HPRA] pursuant to a duly executed Employment Agreement." Each also vacated "the non-competition, non-solicitation or related provisions of the Company Agreement of [HPRA] . . . as it pertains to Employee" and provided that

---

[3] The agreement signed by Dr. Lee and Lee P.A. here includes the phrase "for at least twenty (24) [sic] months." The agreement signed by Dr. Chauvin and Chauvin P.A. does not contain similar language.

5

"the provisions of the Physician Employment Agreement between the parties shall control as to those matters."

The Physician Employment Agreements, in turn, referred to the sales effected by the Membership Interest Transfer and General Release agreements, providing that HPRA would pay the doctors bonuses "[i]n addition to the Salary, as consideration for Employee agreeing to transition from being a Member of [HPRA] to an Employee . . . ." Each employment agreement also provides that if it terminates for certain enumerated reasons, "any additional employee retention payments otherwise due under this Agreement and that certain Membership Interest Transfer and General Release, of event date herewith, will be forfeited."

Most significantly for this appeal, the Physician Employment Agreements signed by Drs. Lee and Chauvin contain an arbitration provision in which the doctors agreed to submit to binding arbitration "any dispute, controversy or claim, whether based on contract, tort, statute, discrimination, or otherwise, relating to, arising from, or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment, termination of employment, or non-compete."

### *The sale of HPRA and commencement of litigation*

On May 13, 2013, HPRA executed a letter of intent with a third party, Radiology Partners, Inc., concerning Radiology Partners' potential acquisition of

HPRA. HPRA and Radiology Partners terminated that letter of intent and executed a new letter of intent in June 2013. Radiology Partners acquired HPRA in September 2013.

In March 2014, Lee P.A. and Dr. Nguyen sued HPRA, Dr. Garcia, and Dr. Stroh. Lee P.A. alleged that the defendants misrepresented the health of HPRA and the existence of a third party interested in acquiring HPRA and that these misrepresentations constituted fraud and a breach of fiduciary duty. Dr. Nguyen alleged that he had been promised an opportunity to become a member of HPRA but was never given such an opportunity and that the defendants' representations to him breached his employment contract, breached fiduciary duties, and constituted fraud.

The defendants filed a plea in abatement and motion to dismiss in favor of arbitration, arguing that Lee P.A.'s claims were governed by the arbitration clause in Dr. Lee's Physician Employment Agreement. They also argued that Dr. Nguyen's claims were interrelated with Lee P.A.'s claims, and therefore the trial court should compel Dr. Nguyen to arbitrate his claims or, in the alternative, stay Dr. Nguyen's claims pending resolution of the arbitration against Lee P.A.

The plaintiffs later amended their petition to add Chauvin P.A. as a plaintiff. They also added requests for declaratory judgments as to the rights of Lee P.A. and Chauvin P.A. under HPRA's Company Agreement and as to Lee P.A.'s rights

under the May 13, 2013 letter of intent. HPRA, Dr. Garcia, and Dr. Stroh supplemented their plea in abatement and motion to dismiss to argue that new plaintiff Chauvin P.A. should be compelled to arbitrate its claims for the same reasons applicable to Lee P.A.

The trial court held a hearing on the plea in abatement and motion to dismiss, at which it heard no testimony but admitted various documents into evidence. Although it continued the hearing, the hearing never resumed. Post-hearing, the plaintiffs amended their petition twice more, to add Jackson Walker as a defendant and include a "petition for writ of mandamus to examine books and records."

The trial court denied the plea in abatement and motion to dismiss in favor of arbitration. HPRA, Dr. Garcia, and Dr. Stroh then filed both an interlocutory appeal and a petition for writ of mandamus in this Court, both of which challenge the trial court's denial of the plea in abatement.[4] HPRA, Dr. Garcia, and Dr. Stroh also requested emergency relief in the form of a stay of trial court proceedings pending our review of the denial of the plea in abatement. On June 27, 2014, we

---

[4] The trial court denied the plea in abatement and motion to dismiss before Jackson Walker was required to appear. Thus, Jackson Walker is not a party to either the appeal or the mandamus proceeding. It did, however, submit a brief as amicus curiae, expressing its intent to seek to compel arbitration in the trial court. *See* TEX. R. APP. P. 11.

8

stayed all proceedings in the trial court, including discovery, pending further order of this court.[5]

## Discussion

HPRA, Dr. Garcia, and Dr. Stroh raise one issue on appeal: whether "the trial court abuse[d] its discretion in denying [their] Plea in Abatement and Motion to Dismiss in Favor of Arbitration, given that (1) the parties signed a valid agreement to arbitrate and (2) Appellees' claims fall within the scope of the arbitration clause?"

## A.    Standard of Review and Substantive Law

We have jurisdiction to review an interlocutory order denying a motion to compel arbitration, regardless of whether we must apply the Federal Arbitration Act, Texas Arbitration Act, or both. TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.016 (West 2015) (party seeking to compel arbitration "[i]n a matter subject to the Federal Arbitration Act" has right to interlocutory appeal), 171.098(a)(1) (West 2011) (party may take interlocutory appeal of order "denying an application

---

[5]    On July 22, 2014, we denied Lee P.A., Chauvin P.A., and Dr. Nguyen's motion for reconsideration of that order. Appellants and amicus observe that the plaintiffs filed a "Sixth Amended Petition" on July 2, 2014, after this Court stayed all trial court proceedings, that does not name HPRA as a defendant and that states, "Plaintiffs assert no common law or statutory claims against HPRA." That document does not appear in the record, and we therefore cannot consider it. *Samara v. Samara*, 52 S.W.3d 455, 456 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex. App.—El Paso 1995, no writ). We note, however, that any pleadings filed in the trial court proceeding without leave of this Court between the date of our order staying the case and the date of this opinion necessarily would have violated our order.

9

to compel arbitration made under Section 171.021" of Civil Practice and Remedies Code); *see also Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006)) ("If a trial court denies a motion to compel arbitration, appellate review may be available under both the TAA and the FAA so long as the TAA is not preempted.").

"We review interlocutory appeals of orders denying motions to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo." *Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)).

Parties seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *Valerus Compression Servs.*, 417 S.W.3d at 207; *In re Provine*, 312 S.W.3d 824, 828–29 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). The existence of a valid arbitration agreement is a legal question. *In re D. Wilson Constr.*, 196 S.W.3d at 781; *Valerus Compression Servs.*, 417 S.W.3d at 208. In interpreting an agreement to arbitrate, we apply ordinary contract

principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Valerus Compression Servs.*, 417 S.W.3d at 208.

"Once an agreement is established, a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Constr.*, 196 S.W.3d at 783 (emphasis original) (internal quotation marks omitted) (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. proceeding)). "Further, courts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis*, 337 S.W.3d at 862.

"[W]here the parties include a broad arbitration provision in an agreement that is 'essential' to the overall transaction, [courts] presume that they intended the [arbitration] clause to reach all aspects of the transaction—including those aspects governed by other contemporaneously executed agreements that are part of the same transaction." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 394–95 (5th Cir. 2002); *see also Kirby Highland Lakes Surgery Ctr. v. Kirby*, 183 S.W.3d 897, 900–01 (Tex. App.—Dallas 2006, orig. proceeding) (citing *Pers. Sec.*).

**B.     Analysis**

*Claims of Lee P.A. and Chauvin P.A.*

HPRA, Dr. Garcia, and Dr. Stroh, as the parties seeking to compel arbitration, bore the burden to demonstrate (1) the existence of a valid and enforceable arbitration agreement and (2) that the claims asserted against them fall within the scope of that agreement.  *See Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *In re Provine*, 312 S.W.3d at 828–29.  They argue that the arbitration provisions in the Physician Employment Agreements of Dr. Lee and Dr. Chauvin, who are not parties to the suit, are enforceable against the plaintiff entities, Lee P.A. and Chauvin P.A., respectively, and cover the claims that Lee P.A. and Chauvin P.A. have asserted in this lawsuit.

Lee P.A. and Chauvin P.A. respond that the arbitration provisions in the Physician Employment Agreements of Drs. Lee and Chauvin are inapplicable because (1) Lee P.A. and Chauvin P.A. are not signatories to the Physician Employment Agreements; (2) their claims relate not to the Physician Employment Agreements but rather to the Company Agreement and thus fall outside the scope of the arbitration provisions; and (3) the Membership Interest Transfer agreements and employment agreements should not be construed together.

***The transfer and employment agreements must be construed together***

"[W]here the parties include a broad arbitration provision in an agreement that is 'essential' to the overall transaction, we will presume that they intended the clause to reach all aspects of the transaction—including those aspects governed by other contemporaneously executed agreements that are part of the same transaction." *Kirby Highland Lakes Surgery Ctr.*, 183 S.W.3d at 900–01 (quoting *Pers. Sec. & Safety Sys.*, 297 F.3d at 394-95). Thus, if the Membership Interest Transfer agreements and Physician Employment Agreements were part of each doctor's overall transaction and the latter are essential to those transactions, then we will presume that the arbitration provisions reach all disputes touching on the transfer agreements.

"The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *see also Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) ("Separate instruments contemporaneously executed as a part of the same transaction and relating to the same subject matter may be construed together as a single instrument.").

HPRA, Dr. Garcia, and Dr. Stroh urge us to apply this general rule and construe each set of transfer and employment agreements as a single transaction.

Lee P.A. and Chauvin P.A. urge us to reject this application of the general rule and treat these documents as four separate transactions because (1) they did not sign the employment agreements, (2) neither employment agreement is essential to the transaction consummated by the corresponding transfer agreement, and (3) the parties' expressed intent demonstrates that the agreements are to be construed separately.

We agree with HPRA, Dr. Garcia, and Dr. Stroh that the transfer and employment agreements must be construed together. Each of the employment agreements refers to the corresponding transfer agreements, and vice versa. In addition, each of the four agreements specifies that HPRA was to make certain payments "[a]s consideration for Employee agreeing to transition from being a Member of [HPRA] to an Employee, and to continue providing professional services to [HPRA]."[6] The transitions in question were effected by the transfer agreements. That the employment agreements refer to the corresponding transfers and provide for payments to be made "as consideration" for them can only mean that the employment agreements were part of the transfers. Moreover, each transfer agreement states in its recitals that the individual doctor executing the

---

[6] The employment agreements use this language, including the capitalized term "Member," although "Member" is not defined in those documents. If divorced from the contemporaneously-executed transfer agreements, these provisions would be meaningless. We must "strive to give meaning to each provision" of all four contracts. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).

14

agreement had agreed to enter into a separate, contemporaneous, employment agreement. And each transfer agreement also specifies how HPRA's Company Agreement, the transfer agreement, and the employment agreement are to be construed together to determine the parties' rights and obligations. Thus, these separate instruments were "contemporaneously executed as a part of the same transaction" and "relat[e] to the same subject matter." *See Harris*, 593 S.W.2d at 306.

Lee P.A. and Chauvin P.A. argue that they should not be bound by the arbitration provisions because they are not parties to the Physician Employment Agreements where they are found. It is well-settled that "instruments may be construed together or treated as one contract even though they are not between the same parties." *Jones*, 614 S.W.2d at 98; *Miles v. Martin*, 321 S.W.2d 62, 66 (Tex. 1959); *Estate of Todd v. Int'l Bank of Commerce*, No. 01-12-00742-CV, 2013 WL 1694937, at \*5 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, pet. denied) (mem. op.). The overall transactions are described in each document as an "Employee agreeing to transition from being a Member of [HPRA] to an Employee." The transfer agreements require execution of the employment agreements, and the reverse is similarly true. Both the transfer and employment agreements are therefore "essential" to accomplishing these transitions. *See Jones*, 614 S.W.2d at 98; *Kirby Highland Lakes Surgery Ctr.*, 183 S.W.3d at 900–01. We conclude that

15

the Lee agreements must be construed together and that the Chauvin agreements must be construed together. *See Jones*, 614 S.W.2d at 98; *Kirby Highland Lakes Surgery Ctr.*, 183 S.W.3d at 900–01.

Lee P.A. and Chauvin P.A. also argue that the employment agreements were not "essential" to the transfer of the professional associations' membership interests. The transfer agreements expressly provide for the doctors becoming employees and include consideration for those transitions. They required the parties to enter into employment agreements of the same date as the transfer agreements. Lee P.A. and Chauvin P.A. argue that "[t]he Membership Interest Transfer agreement and employment agreements were separate, governed different obligations between the parties, and could be fulfilled (or for that matter, breached) independently of one another." But the many terms in the transfer agreements that refer to the parties' obligations to enter and comply with the employment agreements necessarily require us to refer to the latter. Similarly, the termination provisions of the employment agreements purporting to govern payment of money under the transfer agreements require reference to the transfer agreements. It would be impossible to give these provisions meaning, unless the agreements are understood together.

Finally, Lee P.A. and Chauvin P.A. argue that the "entire agreement" provisions in the employment agreements indicate that the Physician Employment

16

Agreements must be construed separately from the transfer agreements. As support, they rely on *I.D.E.A. Corp. v. WC & R Interests, Inc.*, 545 F. Supp. 2d 600 (W.D. Tex. 2008) and *In re Sino Swearingen Aircraft Corp.*, No. 05-03-01618-CV, 2004 WL 1193960 (Tex. App.—Dallas June 1, 2004, no pet.) (mem. op.).

In *I.D.E.A. Corp.*, the federal district court for the Western District of Texas held, "An entire agreement clause demonstrates that the parties did not intend for an arbitration provision contained in the same agreement to apply to claims arising under a separate agreement." 545 F. Supp. 2d at 607. But the district court premised its holding on the facts that the documents in that case did not incorporate each other, did not refer to each other, and were executed months apart. *Id.* at 607–08. Here, by contrast, the agreements expressly refer to each other and were executed contemporaneously as part of a single transaction for each doctor and his respective professional association. The holding of *I.D.E.A. Corp.* is therefore distinguishable.

*In re Sino Swearingen Aircraft Corp.* is also distinguishable. That case involved a narrow arbitration provision in which the parties agreed to arbitrate only disputes "arising out of this Agreement" and defined "Agreement" to include only one document. 2004 WL 1193960, at *2. The parties seeking to avoid arbitration argued that the use of an "entire agreement" provision indicated that the parties' various agreements could not be construed together. *Id.* The court of appeals,

17

however, did not explicitly accept or reject that argument. Instead, it held that the claims themselves arose out of only one or the other of the agreements in question, not both, and "[t]he parties provided for arbitration of claims arising out of the termination of only one of the agreements." *Id.* at *3. It concluded that the arbitration clause in one agreement "does not encompass the parties' dispute under" other agreements. *Id.* By contrast, the parties to this case agreed to a broad provision to arbitrate disputes "relating to, arising from, or connected in any manner to this Agreement, or to the alleged breach of this Agreement, or arising out of or relating to Employee's employment, termination of employment, or non-compete."

The employment agreements cannot be construed without reference to the transfer agreements, which they explicitly reference in both terms governing consideration and terms governing termination. We therefore cannot say with "positive assurance" that this broad language was not intended to cover disputes relating to the transfer agreements executed as part of the same transactions. *See In re D. Wilson Constr.*, 196 S.W.3d at 783. Rather, because the Physician Employment Agreements were "essential" to the transactions in which Lee P.A. and Chauvin P.A. participated—the sale of their respective interests in HPRA—we presume that the arbitration provisions therein were intended to reach the entire transactions. *See Jones*, 614 S.W.2d at 98; *Kirby Highland Lakes Surgery Ctr.*,

18

183 S.W.3d at 900–01. Indeed, each doctor's Physician Employment agreement and transfer agreement were "executed at the same time, for the same purpose, and in the course of the same transaction." *See Jones*, 614 S.W.2d at 98; *Miles*, 321 S.W.2d at 65; *Estate of Todd*, 2013 WL 1694937, at *5. Consequently, they may be "construed together or treated as one contract even though they are not between the same parties." *See Jones*, 614 S.W.2d at 98; *Miles*, 321 S.W.2d at 66; *Estate of Todd*, 2013 WL 1694937, at *5. Accordingly, we hold that the documents must be construed together and treated as a single contract regarding Dr. Lee and Lee P.A. and a single contract regarding Dr. Chauvin and Chauvin P.A.[7]

---

[7] We also note that Lee P.A. and Chauvin P.A. are bound to arbitrate their claims for the additional reason that the Physician Employment Agreements and transfer agreements incorporate each other by reference. *E.g.*, *Rachal v. Reitz*, 403 S.W.3d 840, 846 n.5 (Tex. 2013) (recognizing incorporation by reference as one of "six theories in contract and agency law that may bind nonsignatories to arbitration agreements"); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (same); *Elgohary v. Herrera*, 405 S.W.3d 785, 793 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 191 & n.20 (Tex. 2007); *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003)) (same). Because the agreements explicitly and "plainly refer" to each other, each is incorporated into the other, despite the fact that the signatories on each were different. *Jones v. Pesak Bros. Constr., Inc.*, 416 S.W.3d 618, 626 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also City of Houston v. Williams*, 353 S.W.3d 128, 143 n.15 (Tex. 2011) ("[W]ith any contract, incorporation by reference is possible under contract law."); *Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding [mand. denied]) (holding that arbitration is proper if contract with arbitration provision is incorporated in disputed contract by reference).

### *Drs. Garcia and Stroh can enforce the arbitration provisions*

HPRA, Dr. Garcia, and Dr. Stroh argue that Drs. Garcia and Stroh can enforce the arbitration provisions because they acted as agents of HPRA for purposes of the claims against them.[8] We agree.

When a plaintiff's claims against a defendant are "in substance" claims against the defendant's employer and the plaintiff has agreed to arbitrate claims against the employer, the plaintiff must arbitrate the claims against the employee. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 189–90 (Tex. 2007). The claims here are "in substance" claims against HPRA. For example, each of the professional associations alleges that all defendants failed to disclose critical information in their respective transfer agreements. They allege that the defendants—including Drs. Garcia and Stroh—thus committed breach of contract, breach of fiduciary duty, fraud, and various other torts. But Drs. Garcia and Stroh did not acquire any interest in HPRA under the transfer agreements, nor did either of them participate in the transfer transactions in an individual capacity. Rather, this claim can only be understood as a claim that, in their acts on behalf of HPRA, Drs. Garcia and Stroh committed various torts and breaches of contract. "[W]hen

---

[8]     Lee P.A. and Chauvin P.A. disputed this point in their opposition to the plea in abatement and motion to dismiss. They do not dispute it on appeal, but we must address it nonetheless to determine whether Drs. Garcia and Stroh, neither of whom was a party to any of the agreements at issue, can enforce the arbitration provisions in the employment agreements.

an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007); *see In re Merrill Lynch Trust Co.*, 235 S.W.3d at 188–89. We hold that Drs. Garcia and Stroh can enforce the arbitration clauses in the employment agreements.[9]

### Lee P.A.'s and Chauvin P.A.'s claims are subject to arbitration

Lee P.A. and Chauvin P.A. argue that their claims do not fall within the scope of the employment agreements' arbitration clauses and, further, that they have additional claims arising under a prior agreement not subject to arbitration. In so doing, they focus on the arbitration provisions' references to "this Agreement" and "Employee's employment, termination of employment, or non-compete." They contend that none of their claims "touch on any employment-related matters, thus they do not fall within the scope of the arbitration clauses at issue."

HPRA, Dr. Garcia, and Dr. Stroh respond by noting that the arbitration provision language is not so narrow, encompassing all claims "relating to, arising

---

[9] All of the allegations against defendant Jackson Walker also arise out of actions by an agent for HPRA, specifically by the practice's attorney. As amicus, Jackson Walker argues that our logic therefore applies equally to it: "If the Court agrees that the claims against the doctor defendants must be arbitrated, then the claims against [Jackson Walker] likewise belong in arbitration." Jackson Walker, however, is not a party to this appeal and has not yet sought to compel arbitration in the trial court.

21

from, or connected in any manner" to the employment agreement "or relating to Employee's employment, termination of employment, or non-compete." They argue that such a broad arbitration provision compels us to presume that the parties intended the arbitration provision to reach all aspects of the transaction governed by the transfer and employment agreements. *See Pers. Sec. & Safety Sys.*, 297 F.3d at 394–95; *Kirby Highland Lakes Surgery Ctr.*, 183 S.W.3d at 900–01. We agree.

As we have held previously, an arbitration clause using a phrase such as "any dispute . . . relating to, arising from, or connected in any manner to this Agreement" is broad and "embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). "If the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract containing the arbitration agreement, the claim is arbitrable." *Id.* In light of such a broad arbitration agreement, a claim is not subject to arbitration only if "the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract." *Id.* at 695–96.

Lee P.A. and Chauvin P.A.'s claims unquestionably relate to whether the associations were fraudulently induced to enter into the transfer agreements and, by extension, whether Drs. Lee and Chauvin were fraudulently induced to enter into the transfer and employment agreements. Further, many of the claims in the live petition refer to alleged representations and omissions by the defendants "on or before May 13, 2013," and others as late as May 14, 2013, though the transfer and employment agreements all have effective dates of May 1, 2013. Indeed, several of Lee P.A.'s claims turn on its allegation that it did not receive a copy of its transfer agreement until May 14, 2013, and its theory that it therefore was still a member of HPRA when the latter executed a letter of intent on May 13, 2013. These claims necessarily implicate the transfer and employment agreements and require construction of those agreements to determine the relationships between the parties at the time of any alleged act by the defendants. We also note that Lee P.A. and Chauvin P.A. allege in their live petition that they "relied on [the alleged] failures to disclose" and that "Garcia and Stroh sought to squeeze Lee P.A. and Chauvin P.A. out of HPRA by misrepresenting HPRA's financial condition and by misrepresenting the status of negotiations with a third-party buyer[] of HPRA."

Lee P.A. and Chauvin P.A. argue, however, that their claims are actually based on the Company Agreement, HPRA's organizational document. They argue that "these claims accrued *before* the employment agreements were executed by

23

the parties, and therefore are not affected by the non-retroactive arbitration clauses contained in the subsequently executed agreements." We disagree. On its face, the live pleading alleges that many if not all of the misrepresentations and omissions of which Lee P.A. and Chauvin P.A. complain occurred after May 1, 2013, the effective date of both employment agreements. Further, their claims cannot be decided solely by reference to the Company Agreement. Indeed, some of Lee P.A.'s claims arise explicitly from the Lee transfer agreement. Applying the transfer and employment agreements to the claims in this case does not require us to give them a construction allowing for retroactive application.

We cannot say with "positive assurance that [the] arbitration clause[s] [are] not susceptible of an interpretation which would cover the dispute at issue." *See In re D. Wilson Constr.*, 196 S.W.3d at 783. We therefore hold that the trial court erred to the extent it denied arbitration on the theory that the arbitration provisions do not cover the plaintiffs' claims.

The defendants proved the existence of valid, enforceable arbitration agreements and that the claims against them fall within the scope of those agreements. Accordingly, we hold that the trial court erred in denying the plea in abatement and motion to dismiss in favor of arbitration.

***Claims of Dr. Nguyen***

HPRA, Dr. Garcia, and Dr. Stroh ask us to hold that Dr. Nguyen must arbitrate his claims or, in the alternative, that Dr. Nguyen's claims must be stayed. Lee P.A., Chauvin P.A., and Dr. Nguyen respond that Dr. Nguyen was only an employee of HPRA and never a member, did not participate in any transaction containing an arbitration provision, and asserts claims that are inherently different from those asserted by Lee P.A. and Chauvin P.A. Thus, they argue that compelling arbitration or staying Dr. Nguyen's claims pending resolution of the other plaintiffs' claims would be inappropriate.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960)). Unlike Lee P.A. and Chauvin P.A., Dr. Nguyen did not sign any agreement or participate in any transaction involving an arbitration agreement. In particular, he had no involvement in the membership transfers by which Drs. Lee and Chauvin became employees of HPRA.

Texas and federal law recognize six theories under which a court could compel a non-signatory to arbitrate his claims. *In re Merrill Lynch Trust Co.*, 235 S.W.3d at 191; *see Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th

Cir. 2003); *Elgohary v. Herrera*, 405 S.W.3d 785, 793 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "Those theories include (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary." *Elgohary*, 405 S.W.3d at 793 (citing *Bridas*, 345 F.3d at 356). None of these theories is applicable to Dr. Nguyen's claims, and HPRA, Dr. Garcia, and Dr. Stroh do not argue that any of them applies. Rather, they insist that Dr. Nguyen should be compelled to arbitrate his claims "[b]ased on the interrelated and inseparable nature of Plaintiffs' allegations." That the claims are interrelated and depend on some of the same facts, however, is not a sufficient basis for compelling a non-signatory to arbitrate. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–20, 103 S. Ct. 927, 939 (1983); *In re Merrill Lynch Trust Co.*, 235 S.W.3d at 192–93.

HPRA, Dr. Garcia, and Dr. Stroh nevertheless argue that Dr. Nguyen's claims must be arbitrated because Dr. Nguyen has the same counsel as and filed this lawsuit along with Lee P.A. and Chauvin P.A. HPRA, Dr. Garcia, and Dr. Stroh also argue that the plaintiffs' claims all "stem from the same operative facts—an alleged plot by Dr. Garcia, Dr. Stroh, and HPRA to obtain all membership interests in HPRA, to the detriment of [the plaintiffs], and then to sell those interests to another company." Finally, HPRA, Dr. Garcia, and Dr. Stroh contend that Lee P.A. and Chauvin P.A., as former members of HPRA, are

26

potential defendants or at least responsible third parties to Dr. Nguyen's claims. These contentions may be correct, but they do not mean that Dr. Nguyen's claims must be arbitrated.

The record does not reflect any agreement by Dr. Nguyen to arbitrate his claims. We therefore hold that the trial court did not err by not compelling arbitration of Dr. Nguyen's claims. *See AT&T Techs.*, 475 U.S. at 648, 106 S. Ct. at 1418.

In the alternative, HPRA, Dr. Garcia, and Dr. Stroh argue that the trial court should have stayed the litigation pending resolution of their arbitration of the claims by Lee P.A. and Chauvin P.A. Under the TAA, "[t]he [trial] court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter." TEX. CIV. PRAC. & REM. CODE ANN. § 171.025(a) (West 2011). But "[t]he stay applies only to the issue subject to arbitration *if that issue is severable from the remainder of the proceeding*." *Id.* § 171.025(b) (emphasis added).

> A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

27

Similarly, under the FAA, claims of a non-signatory must be stayed if "(1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are 'inherently inseparable,' and (3) the litigation has a 'critical impact' on the arbitration." *In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)); *see also* 9 U.S.C. § 3 (providing for stay of litigation pending arbitration).

Dr. Nguyen has pleaded that he has causes of action for "misrepresentations, breach of contract, breach of fiduciary duty, knowing participation in a breach of fiduciary duty, fraud, fraud in a stock transaction, violations of the Texas Securities Act and promissory estoppel." Underlying all of those claims are two critical assertions: (1) Dr. Nguyen's employment contract entitled him to an opportunity to become a member of HPRA, and (2) by failing to extend such an offer on a timely basis, HPRA, Dr. Garcia, and Dr. Stroh induced Dr. Nguyen to forgo potentially lucrative business opportunities. Dr. Nguyen seeks up to $2,000,000 in actual damages, exemplary damages, and "equitable relief against Defendants in the form of an equitable accounting, profit disgorgement, equitable recessionary damages and/or a constructive trust with respect to the benefits received by Defendants in the sale of HPRA." Dr. Nguyen's claims and requests for relief arise from the

28

same facts and are inherently inseparable from Lee P.A. and Chauvin P.A.'s claims regarding the sale of HPRA.[10]

The litigation will also have a critical impact on the arbitration. Dr. Nguyen asserts that he was entitled to a share of HPRA and that he only learned that he would not be given an opportunity to join the practice in April 2013. In seeking to prove the nature and value of the interest to which he claims he was entitled, he will certainly want to introduce evidence of the sale of HPRA, including the sales price, the history of negotiations, and the timing of those negotiations: the very fact issues raised by Lee P.A. and Chauvin P.A. Indeed, his claims for "fraud in a stock transaction [and] violations of the Texas Securities Act" make no sense unless they refer to the sale of HPRA, given that Dr. Nguyen did not participate in any stock or securities transactions involving the defendants. If Dr. Nguyen seeks discovery related to the sale of HPRA or a recovery based in any way on that sale, his litigation may "subvert the . . . defendants' right to a meaningful arbitration with [Lee P.A. and Chauvin P.A.] by deciding issues subject to the arbitration." *In re Devon Energy Corp.*, 332 S.W.3d at 549. This risk is necessarily heightened by the fact that the same counsel represents all plaintiffs and thus has an incentive to pursue the broadest possible discovery and theories of the case in both the

---

[10]     We stress that we do not express any opinion on the merits of any of the claims or defenses in this suit. Instead, we must focus on the relationship between the claims and relief sought as pleaded.

arbitration and the trial court proceedings, in order to maximize the chances of recovery in both proceedings.

"Our focus concerns the preservation of meaningful arbitration, not the potential harm to the interests of a nonsignatory." *Id.* at 550. Dr. Nguyen's litigation involves the same operative facts as those in the arbitration. As a result, it threatens to jeopardize the integrity of the parallel arbitration. Under both the FAA and TAA, HPRA, Dr. Garcia, and Dr. Stroh were entitled to a stay of the litigation pending resolution of the claims in the arbitration. *See* 9 U.S.C. § 3; Tex. R. Civ. P. 171.025(a); *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; *In re Devon Energy Corp.*, 332 S.W.3d at 550. We therefore hold that the trial court abused its discretion in refusing to stay the litigation pending the result of the arbitration. *See In re Devon Energy Corp.*, 332 S.W.3d at 550.

## Conclusion

We hold that the trial court abused its discretion by denying HPRA, Dr. Garcia, and Dr. Stroh's plea in abatement and motion to dismiss in favor of arbitration. We reverse and remand the case to the trial court for entry of an order compelling arbitration of Lee P.A.'s and Chauvin P.A.'s against HPRA, Dr. Garcia, or Dr. Stroh and staying Dr. Nguyen's claims pending resolution of that arbitration. We deny the petition for writ of mandamus as moot.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.