**Opinion issued November 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00266-CV

_____

**VALERUS COMPRESSION SERVICES, LP AND VALERUS SERVICES COMPANY, LLC, Appellants**

**V.**

**WILLIAM AUSTIN, Appellee**

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-66317**

*and*

_____

## NO. 01-13-00507-CV

_____

**VALERUS COMPRESSION SERVICES, LP AND VALERUS SERVICES**

**COMPANY, LLC, Appellants**

**V.**

**WILLIAM AUSTIN, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-66317**

---

## O P I N I O N

The underlying dispute concerns the propriety of the forced redemption of William Austin's partnership interests in Valerus Compression Services, L.P. by Valerus Compression Services, L.P. and Valerus Services Company, LLC (collectively "Valerus"). In two interlocutory appeals, Valerus challenges the trial court's orders (1) denying Valerus's motion to compel arbitration of Austin's claims and (2) granting Austin's motion to stay the parallel arbitration proceeding brought by Valerus. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a) (West 2011).[1] We conclude that the trial court erred by denying Valerus's motion to compel arbitration and granting Austin's motion to stay arbitration and, accordingly, we reverse and remand.

---

[1] The parties agree that the Texas Arbitration Act governs. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–171.098 (West 2011).

2

## Background

Valerus hired William Austin to serve as its CFO in 2009. Shortly thereafter, in connection with a recapitalization, Austin purchased partnership interests in Valerus Compression Services, LP. The partnership interests were governed by a Partnership Agreement. The Partnership Agreement requires that all disputes "arising out of or in connection with this Agreement" be resolved by arbitration.

In April 2010, the parties executed a Separation Agreement and General Release of Claims ("Separation Agreement") reflecting the termination of Austin's employment with Valerus. The Separation Agreement provided, among other things, that Valerus would provide Austin severance payments and continued health coverage under specified terms. The Separation Agreement also addressed Austin's partnership interests. It states, in Section 4, in relevant part:

> Executive's Rights Regarding Employee Partnership Interests. The Parties acknowledge and agree that the termination of Executive's employment entitled Executive to certain benefits pursuant to Section 5.8 of the Employment Agreement. Accordingly, Executive shall have the right to retain all or any part of Executive's Partnership Interests (as defined in the Partnership Agreement), without any forced redemption by the Partnership or its designees under the Partnership Agreement; provided, however, that Executive may, within six (6) months and one day following the Separation Date, request that the Partnership exercise its unilateral right under the Partnership Agreement to redeem or purchase all or any part of Executive's Employee Partnership Interests (as defined in the

Partnership Agreement) for the price set forth in Section 13.02(a) of the Partnership Agreement; provided further, however, that the Partnership shall not be required to comply with any such request and shall retain discretion as to whether to exercise such right upon Executive's request. As used herein the term "Partnership Agremeent" has the same meaning as contained in the Employment Agreement.

The Separation Agreement contains another provision that fixes venue and incorporates a fee-shifting agreement. In relevant part, it states:

Venue for any action that may be brought by any Party involving the enforcement of this Agreement or any rights, duties or obligations under this Agreement shall be brought exclusively in the state or federal courts (as applicable) sitting in Houston, Texas. Executive consents and waives any objection to personal jurisdiction and venue in those courts for any such action. The Parties acknowledge and agree that Sections 4.7(b) and 4.7(c) of the Employment Agreement are hereby incorporated in this Agreement by reference such that if Executive shall obtain any money judgment or otherwise prevail with respect to any arbitration or litigation brought by Executive or the Company to enforce or interpret any provision in this Agreement, the Company, to the fullest extent permitted by applicable law, shall reimburse Executive for all of Executive's reasonable legal fees and expenses incurred in such arbitration or litigation.

The Separation Agreement also contained the following merger clause:

This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof, this Agreement supersedes all prior and contemporaneous agreements and understandings, oral or written, between the Parties hereto concerning the subject matter hereof. This Agreement may be amended, waived or terminated only by a written instrument executed by all Parties hereto.

In December 2011, Austin began working as an Executive Vice President and CFO of Exterran Energy Corporation. Valerus notified Austin that his

4

employment violated the non-competition provision in the Partnership Agreement, permitting Valerus to forcibly redeem Austin's partnership interests, and Valerus redeemed the partnership interests based on the formula set forth in section 13.02 of the Partnership Agreement. In response, on November 6, 2012, Austin sued Valerus in state district court in Houston, seeking a declaratory judgment that (1) the Separation Agreement remains in full force and effect; (2) Austin is not in breach of the Separation Agreement or the Partnership Agreement; (3) Austin is entitled to retain ownership of his partnership interests; (4) Valerus must reissue Austin's Certificates 288-B and 225-C; and (5) Valerus must return the certificates to Austin in accordance with the Separation Agreement. Austin also alleged Valerus had converted his partnership interests and breached the Separation Agreement. He sought specific performance, the return of the certificates evidencing his ownership in Valerus Compression Services, LP.

On December 3, 2012, Valerus moved to compel arbitration and abate the trial court proceedings, arguing that the arbitration provision in the Partnership Agreement requires Austin to arbitrate his claims. On the same day, Valerus also initiated an arbitration proceeding with the American Arbitration Association ("AAA"), requesting declaratory relief under the Partnership Agreement. Valerus requested a declaration that (1) Austin was a "Breaching Party" and that an

5

Expulsion Event occurred under the Partnership Agreement, (2) Valerus had the unilateral option under Section 13.01(c) of the Partnership Agreement to redeem Austin's partnership interests for the amount set forth in Section 13.02(a)(ii) of the Partnership Agreement, (3) the total redemption price of Austin's vested partnership interests under Section 13.01(c) is $10,697.67, and (4) the restrictions on competition under Section 8.03(f) of the Partnership Agreement are reasonable and enforceable under Texas law.

Austin opposed the motion to compel arbitration, contending that the venue and merger provisions in the Separation Agreement operate to revoke or extinguish the arbitration provision in the Partnership Agreement with respect to the subject matter of the suit: the forcible redemption of his partnership interests. The trial court denied Valerus's motion on March 8, 2013, and Valerus appealed.

On March 7, 2013, the day before the trial court signed the order denying the motion to compel arbitration, and three months after Valerus initiated the arbitration proceeding, Austin filed an emergency motion to stay the arbitration. The trial court granted the emergency motion pending further briefing. On March 28, 2013, Austin filed a motion to continue the stay, arguing that Valerus's claims were not arbitrable because the Separation Agreement governed and controlled disputes regarding forced redemption of partnership interests and did

not contain an arbitration provision. Austin also argued that the arbitration should be stayed to avoid inconsistent rulings and unnecessary expense. The trial court granted the stay, and Valerus appealed from that order as well.[2]

**Discussion**

**I. Did the trial court err in denying Valerus's motion to compel arbitration?**

We first consider Valerus's contention that the trial court erred in denying its motion to compel arbitration of Austin's claims.

**A. Standard of Review and Substantive Law**

Section 171.098 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order denying a motion to compel arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (West Supp. 2013). We review interlocutory appeals of orders denying motions to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo. *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

A party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within

---

[2] Because the issues in the two appeals overlap, we will dispose of both appeals in this single opinion.

7

the scope of that agreement. *In re Provine*, 312 S.W.3d 824, 828–29 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). Whether a valid arbitration agreement exists is a legal question. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). In interpreting the parties' agreement, we apply ordinary contract principles. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* at 229. No single provision taken alone will be given controlling effect. *Id.*

Once an arbitration agreement is established, "a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783 (internal citations omitted). If a valid arbitration agreement exists, "courts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re B.P. Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App.—

Houston [14th Dist.] 2003, orig. proceeding).

If a party seeking arbitration carries its initial burden to prove the existence of an agreement to arbitrate, then a strong presumption favoring arbitration arises, and the burden shifts to the party opposing arbitration to prove an affirmative defense to the agreement. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).

## B. Analysis

In its first appeal, Valerus contends that the trial court erred in denying its motion to compel arbitration because the Partnership Agreement contains a valid, enforceable arbitration agreement and Austin's claims fall within the scope of that agreement. Valerus further argues that none of Austin's defenses are meritorious: specifically, Valerus argues that the Separation Agreement did not revoke or extinguish the arbitration provision in the Partnership Agreement, that Valerus did not waive its right to arbitrate, and that Valerus is not estopped from compelling arbitration. We address these issues in turn.

**1. Did the Separation Agreement revoke the arbitration agreement with respect to claims regarding forcible redemption?**

The arbitration provision in the Partnership Agreement provides that all disputes "arising out of or in connection with this Agreement" shall be resolved by arbitration.[3] Austin acknowledges that he agreed to this arbitration provision in the Partnership Agreement, but contends that the Separation Agreement revoked or extinguished the arbitration provision with respect to any dispute regarding forcible redemption of his partnership interests. Specifically, Austin asserts that "[t]he Separation Agreement bars forced redemption and expressly states that disputes involving forced redemption must be brought exclusively in court."

Austin's argument is based on three provisions of the Separation Agreement. Austin first argues that Section 4 of the Separation Agreement grants him an

---

[3] The Partnership Agreement's arbitration provision has been amended. The Second Amended and Restated Agreement of Limited Partnership, which was in place at the time that Austin began his employment at Valerus and is the version relied on by Austin, says that the parties "agree to submit to arbitration" "[a]ll disputes arising out of or in connection with this Agreement," and that the arbitrator's decision will be "final, nonappealable, and binding." The Fifth Amended version, which is the current version of the agreement and which Valerus contends is the operative agreement, says "all claims, counterclaims, demands, causes of action, disputes, controversies, and other matters in question arising out of or in connection with this Agreement . . . shall be resolved by mandatory and binding arbitration." Austin contends that the partnership lacked authority to amend the Partnership Agreement and, therefore, he is not be bound by the provision in the Fifth Amended Partnership Agreement. But Valerus contends, and we agree, that the outcome would be the same under either provision.

10

unqualified right to "'retain all or any part of [his partnership interests] without any forced redemption by [Valerus] under the Partnership Agreement.'" He argues that the purpose of each of his claims is to enforce this right. Austin then points to the venue provision in the Separation Agreement, which provides that "[v]enue for any action that may be brought by any Party involving the enforcement of this Agreement or any rights, duties or obligations under this Agreement shall be brought exclusively in the state or federal courts (as applicable) sitting in Houston, Texas." This language, Austin contends, mandates that his claims be brought in a Houston court, and nowhere else. He argues that this is confirmed by the Separation Agreement's merger provision, which states "[t]his Agreement contains the entire agreement of the Parties with respect to the subject matter hereof." Austin argues that the "subject matter hereof" is forced redemption of partnership interests, the subject of his claims.

Austin asserts that "magic words" are not necessary to revoke an arbitration provision, and that, when read together, these three provisions of the Separation Agreement—Section 4, and the venue and merger provisions—operate to revoke or supersede the Partnership Agreement's arbitration agreement with respect to claims involving forced redemption. In support of his argument, Austin relies upon *TransCore Holdings, Inc. v. Rayner*, 104 S.W.3d 317 (Tex. App.—Dallas

11

2003, pet. denied). In *TransCore*, the Dallas Court of Appeals concluded that a Termination Agreement precluded the enforcement of an arbitration provision in an earlier Stock Purchase Agreement. *Id.* at 323. But Austin's reliance on *TransCore* is unavailing because the Termination Agreement in that case contained a broad and unconditional release of all previous agreements that is absent here. It provided:

> Except as to the promises made in this letter and except as otherwise provided for in this letter, Viastar and TransCore, on the one hand, and you [Rayner] on the other hand, hereby fully, forever, irrevocably and unconditionally release, remise, settle and discharge one another from any and all manner of claims, charges, complaints, debts, liabilities, demands, actions, causes of action, suits, rights, covenants, contracts, controversies, *agreements*, *promises*, omissions, damages, obligations and expenses of any kind, including attorneys' fees, whether known or unknown, which they had, now have, or hereafter may have against each other arising prior to the date of this letter whether or not pursuant to the terms and conditions set forth in any prior agreements between yourself, Viastar, affiliated companies and its parent, provided however that nothing contained in this letter shall release or discharge you from any obligations with respect to claims [the] Viastar and/or TransCore has, now have, or hereafter may have against you under or pursuant to Sections 7, 8, and 9 of the Employment Agreement date May 12, 2000.

*Id.* at 320–21 (Emphasis added). Accordingly, the *TransCore* court concluded that, because the earlier agreement was no longer in effect, TransCore could not rely upon the arbitration agreement in it to compel arbitration. *Id.* at 320–23.

The Separation Agreement in this case does not contain analogous language

12

expressly extinguishing the Partnership Agreement or its arbitration provision. On the contrary, here, both parties agree that the Partnership Agreement, including the arbitration provision, is still in effect and applies at least to some claims, and the only dispute is whether the arbitration provision applies to the particular claims Austin has asserted.

While we agree with Austin that no "magic words" are required, an agreement to supersede or revoke an earlier arbitration agreement must do so in unequivocal terms such that the subsequent agreement cannot be harmonized with the arbitration provision. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227; *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.*, 809 S.W.2d 589, 591 (Tex. App.—Dallas 1991, writ dism'd w.o.j.). Here, Austin points to a portion of the venue provision in the Separation Agreement that fixes venue in Houston courts as support for his claim that the Separation Agreement revoked the arbitration agreement. But the venue clause continues:

> The Parties acknowledge and agree that Sections 4.7(b) and 4.7(c) of the Employment Agreement are hereby incorporated in this Agreement by reference such that if Executive shall obtain any money judgment or otherwise prevail with respect to any *arbitration* or litigation brought by Executive or the Company *to enforce or interpret any provision in this Agreement*, the Company, to the fullest extent permitted by applicable law, shall reimburse Executive for all of Executive's reasonable legal fees and expenses incurred in such *arbitration* or litigation.

13

(emphasis added).[4] Thus, the venue provision expressly contemplates that both arbitration and litigation proceedings may be initiated to enforce the provisions of the Separation Agreement, i.e., that the arbitration agreement in the Partnership Agreement survived the execution of the Separation Agreement, even with respect to claims to enforce or interpret the Separation Agreement.

The mere presence of venue and merger provisions does not invalidate an arbitration agreement when the provisions can be harmonized with the agreement to arbitrate. *See Phytel, Inc. v. Smiley*, No. 05-12-00607-CV, 2013 WL 1397085, at *3 (Tex. App.—Dallas Apr. 5, 2013, no pet.) (mem. op.); *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 365 (Tex. App.—Beaumont 2008, no pet.); *Coody Custom Homes LLC v. Howe*, No. 10-06-00098-CV, 2007 WL 1374136, at *2 (Tex. App.—Beaumont May 9, 2007, no pet.) (mem. op.); *Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 901 (Tex. App.—Austin 2006, no pet.); *New Concept Constr. Co. v. Kirbyville Consol. Indep. Sch. Dist.*, 119 S.W.3d 468, 470 (Tex. App.—Beaumont 2003, pet. denied); *Valero Energy Corp. v. Teco Pipeline Corp.*, 2 S.W.3d 576, 587 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also In re Winter Park Constr., Inc.*, 30 S.W.3d 576, 578 (Tex. App.—Texarkana 2000, orig. proceeding). Here, the venue provision can be

---

[4]   The Employment Agreement is not included in the appellate record.

14

harmonized with the arbitration provision, because it can be construed to fix venue in Houston courts in the event that arbitration is waived or for proceedings to enforce an arbitration award. *See Coody Custom Homes LLC*, 2007 WL 1374136, at \*2; *New Concept Constr. Co.*, 119 S.W.3d at 470.

Because the venue clause expressly contemplates that both litigation and arbitration proceedings may be brought to enforce the Separation Agreement, and can be harmonized with the arbitration provision, we hold that the Separation Agreement does not abrogate partnership arbitral rights with respect to forcible redemption of partnership interests. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227; *Transwestern Pipeline Co.*, 809 S.W.2d at 591.

Accordingly, we sustain Valerus's first issue.

### 2. Are Austin's claims within the scope of the arbitration agreement?

If a valid arbitration agreement exists, "courts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis*, 337 S.W.3d at 862. In determining whether the claims fall within an arbitration agreement's scope, a court focuses on the facts alleged, not on the causes of action asserted. *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding). To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable

15

claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re B.P. Am. Prod. Co.*, 97 S.W.3d at 370.

Here, the parties agreed to arbitrate all disputes "arising out of or in connection with" the Partnership Agreement. Valerus contends that Austin's claims fall within the scope of that agreement. Specifically, Valerus contends that some of Austin's claims are directly premised on the Partnership Agreement, and that none of them may be decided without reference to the Partnership Agreement. *See Enter. Field Servs., LLC v. TOC-Rocky Mountain, Inc.*, 405 S.W.3d 767, 773–74 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *In re B.P. Am. Prod. Co.*, 97 S.W.3d at 370. Austin responds that even if a valid arbitration agreement exists, his claims do not fall within its scope, because his claims are based solely upon the rights conferred upon him by the Separation Agreement, which he contends is "the only agreement that governs this dispute."

We conclude that Austin's claims fall within the scope of the arbitration provision. Adjudicating Austin's claims will require interpretation of the Partnership Agreement's terms. The Partnership Agreement states the terms under which partnership interests may be forcibly redeemed, prohibits competition by owners of partnership interests, and otherwise governs the partnership. Indeed, despite his contention that the Separation Agreement is the only agreement that

16

governs this dispute, Austin's petition expressly requests a declaration that he has not breached the Partnership Agreement, and all of his claims relate to his partnership interests. The allegations in Austin's petition thus are "factually intertwined with arbitrable claims or otherwise touch on the subject matter of the agreement containing the arbitration provision." *Enter. Field Servs.*, 405 S.W.3d at 773 (quoting *In re B.P. America Prod. Co.*, 97 S.W.3d at 370); *see Ellis*, 337 S.W.3d at 861–62 (courts are required to resolve all doubts regarding the scope of arbitration agreement in favor of arbitrability once court has determined that a valid arbitration agreement exists); *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (claim not subject to arbitration only if "the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract"); *see also Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 392 S.W.3d 633, 635 (Tex. 2013) (noting that dispute touching upon two agreements, one of which contained arbitration clause, was subject to arbitration). Accordingly, we conclude that Austin's claims fall within the scope of the arbitration clause in the Partnership Agreement.

17

We sustain Valerus's second issue.[5]

### 3. Austin's defenses

Once a valid arbitration agreement has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding); *In re Hartigan*, 107 S.W.3d 684, 687–88 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]). Austin raises the defenses of waiver and estoppel. He contends that Valerus waived the right to arbitrate by entering in to the Separation Agreement and that Valerus should be estopped from enforcing the arbitration agreement for the same reason. But Austin's waiver and estoppel arguments are premised on his argument that the express language of the Separation Agreement revoked the arbitration agreement with respect to Austin's claims regarding forced redemption. Because we have rejected the premise of Austin's contention, Austin's waiver and estoppel defenses fail.

We sustain Valerus's third issue.

---

[5] Although we have determined that a valid arbitration agreement exists and that Austin's claims are subject to arbitration, we express no opinion regarding the merits of Austin's claims.

### 4. Abatement of Lawsuit

"Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753–54. Because we hold that there is a valid arbitration agreement which encompasses Austin's claims, and because Valerus has not waived its right to compel arbitration and is not estopped from exercising its right to compel arbitration, the trial court proceedings should have been abated and arbitration compelled. *Id.*

We sustain Valerus's fourth issue.

## II. Did the trial court err in granting Austin's motion to stay arbitration?

We now turn to Valerus's second appeal, in which it contends that the trial court erred in granting Austin's motion to stay the arbitration.

### A. Standard of Review

Section 171.098 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order staying arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (West Supp. 2013). A party moving to stay arbitration must show that there is not an agreement to arbitrate. *See id.* § 171.023 (West 2011). We apply a no-evidence standard of review to orders granting motions to stay

19

arbitration. *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 417 n.7 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

**B. Analysis**

In its first issue, Valerus contends the Partnership Agreement contains a valid, enforceable arbitration agreement and its claims for declaratory relief under the Partnership Agreement fall within the scope of that agreement. In its second issue, Valerus contends that the Separation Agreement did not revoke or extinguish the arbitration provision in the Partnership Agreement.

In response, Austin argues that the Separation Agreement revoked the arbitration agreement with respect to disputes regarding the forcible redemption of Austin's partnership interests, that the dispute regarding forcible redemption of his shares is outside the scope of the arbitration provision, and that he did not waive his right to object to arbitration because he participated subject to his objection that arbitration was not the appropriate forum.

In the arbitration, Valerus seeks declarations that (1) Austin was a "Breaching Party" and that an Expulsion Event occurred under the Partnership Agreement, (2) Valerus had the unilateral option under Section 13.01(c) of the Partnership Agreement to redeem Austin's partnership interests for the prices set forth in Section 13.02(a)(ii) of the Partnership Agreement, (3) the total redemption

price of Austin's vested partnership interest under Section 13.01(c) is $10,697.67, and (4) the restrictions on competition under Section 8.03(f) of the Partnership Agreement are reasonable and enforceable under Texas law. Austin concedes that "there is no distinction" between his claims and Valerus's claims, because both are "flip-sides of the forced redemption issue" and are "mirror-images of one another." Having already decided that the Separation Agreement did not abrogate partnership arbitral rights with respect to forcible redemption of Austin's partnership interests, and that Austin's claims fall within the scope of the arbitration provision, we agree that Valerus's claims also fall within the arbitration agreement's scope, and we sustain Valerus's first and second issues. Accordingly, we hold that the trial court erred in staying the arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.023 (party moving to stay arbitration must show that there is not an agreement to arbitrate). Because our resolution of Valerus's first two issues requires reversal, we do not reach Valerus's remaining issues.

## Conclusion

We reverse the trial court's order denying Valerus's motion to compel arbitration and the order staying the arbitration proceeding and remand for further proceedings compelling arbitration.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.