

# NUMBER 13-18-00275-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| LAW OFFICE OF<br>THOMAS J. HENRY, | Appellant, |
| **v.** | |
| PRISCILLA ANN GARCIA, | Appellee. |

### On appeal from the County Court at Law No. 3
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa[1]**
**Memorandum Opinion by Justice Hinojosa**

The Law Office of Thomas J. Henry (the Firm), appellant, appeals from the trial

court's interlocutory order staying arbitration between it and former client Priscilla Ann

---

[1] Chief Justice Contreras not participating.

Garcia, appellee.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(2) (West, Westlaw through 2017 1st C.S.).  In one issue, the Firm contends that the trial court abused its discretion in staying arbitration because there was an enforceable agreement to arbitrate between it and Garcia.  We reverse and remand.

## I. BACKGROUND

On October 24, 2012, a vehicle Garcia operated collided with a commercial motor vehicle owned by Alamo Concrete Products Company (Alamo Concrete).  Later the same day, Garcia signed a "Power of Attorney and Contingent Fee Contract" (the Representation Agreement).  The Representation Agreement provides, in relevant part, the following:

<u>THIS CONTRACT IS SUBJECT TO ARBITRATION</u>

This agreement is made between Client(s), referred to as "client" and the Law Offices of Thomas J. Henry, hereinafter referred to as "Attorneys".

. . . .

2.    <u>ATTORNEY'S FEES</u>

In consideration of the services rendered to Client by Attorneys, Client does hereby assign, grant and convey to Attorney the following present undivided interests in all the claims and courses [sic] of action for and as a reasonable contingent fee for Attorneys' services and said contingent attorneys' fee will be figured on the total gross recovery which included any money received, including but not limited to personal injury protection (PIP), uninsured motorist coverage or any type of insurance coverages.

37.5% of any settlement or recovery made before suit is filed thereon;
42.5% of any settlement or recovery made after suit is filed;
50%   of any settlement or recovery made after a notice of appeal has been given or an appeal bond has been filed.

3.     <u>ASSIGNMENT OF INTEREST</u>

In consideration of Attorneys' services, the Client hereby conveys and assigns to Attorney and agrees to pay to Attorneys an undivided interest in and to all of Client's claims and causes of action to the extent of the percentage set out in Paragraph 2.

. . . .

10.     <u>ARBITRATION</u>

Any and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provision hereof, the providing of services by Attorneys to Client, or in any way relating to the relationship between Attorneys and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in affect [sic] with the American Arbitration Association. Any such arbitration shall be conducted in Nueces County, Texas. This arbitration provision shall be enforceable in either federal or state court in Nueces County, Texas, pursuant to the substantive federal laws established by the Federal Arbitration Act. Any party to any award in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Nueces County, Texas, having jurisdiction.

. . . .

THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION STATUTE.

The Firm admits that the Representation Agreement was not immediately signed by an authorized Firm attorney.

On July 16, 2014, Greggory A. Teeter, an attorney affiliated with the Firm,[2] filed an original petition against Alamo Concrete on Garcia's behalf. Since Garcia's lawsuit

---

[2] The trial court admitted "under seal" a document titled "Contract for Contracted Professional Services with the Law Office of Thomas J. Henry" signed by Teeter. We need not determine the exact nature of the document for our disposition.

3

was filed, Teeter took or defended twelve depositions in the case, participated in written discovery, filed several motions or responses to motions, and attended several hearings.

In December 2016, the Firm terminated its affiliation with Teeter. Approximately a week thereafter, Garcia, represented by Teeter, notified the Firm that she was discharging it from representing her in her lawsuit against Alamo Concrete. At some point after Teeter's termination, a Firm attorney countersigned the Representation Agreement.

On January 4, 2017, the Firm intervened in Garcia's personal injury lawsuit seeking to collect its attorney's fees under the Representation Agreement. The Firm also initiated arbitration proceedings with the American Arbitration Association. Eventually, the trial court severed the Firm's request for attorney's fees from Garcia's personal injury lawsuit.[3] Garcia then filed a motion to stay the Firm's arbitration proceeding in the Firm's lawsuit for attorney's fees, to which the Firm filed a written response. The trial court held an evidentiary hearing wherein it considered the in-court testimony of Garcia, Thomas J. Henry, and two paralegals who had been employed by the Firm. The trial court granted Garcia's motion to stay arbitration. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(2).

## II. DISCUSSION

Garcia's motion to stay arbitration was premised on section 82.065(a) of the Texas Government Code (the barratry statute), section 171.002(a)(3) of the Texas Civil Practice

---

[3] According to representations by the Firm's counsel, Garcia settled her claims against Alamo Concrete for $650,000. The settlement proceeds were dispersed under three separate checks made out to: (1) the Firm and Teeter in the amount of $276,250 for attorney's fees; (2) Garcia in the amount of $258,825.50 for Garcia's recovery; and (3) the Firm and Teeter in the amount of $114,924.50 for expenses.

4

and Remedies Code (the TAA), and our opinion in *Godt*. TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3) (West, Westlaw through 2017 1st C.S.); TEX. GOV'T CODE ANN. § 82.065(a) (West, Westlaw through 2017 1st C.S.); *In re Godt,* 28 S.W.3d 732, 734–39 (Tex. App.—Corpus Christi 2000, orig. proceeding). The gravamen of Garcia's argument was that the Firm's failure to countersign the Representation Agreement invalidated it and the arbitration clause included therein under both statutes. As part of the Firm's issue, it contends that Garcia's reliance on the authority she referenced to the trial court is misplaced.

## A. Standard of Review

When reviewing an order granting a motion to stay arbitration, we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to its legal determinations. *Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 212 (Tex. App.—Austin 2013, no pet.); *see also Bennett v. Leas*, No. 13-06-00469-CV, 2008 WL 2525403, at *2 (Tex. App.—Corpus Christi Jun. 26, 2008, pet. abated) (mem. op.). Whether a valid arbitration agreement exists is a legal question that we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

## B. Applicable Law

Under the Texas Arbitration Act (TAA)[4] a court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement

---

[4] The Representation Agreement is inconsistent regarding whether it is governed by the Federal Arbitration Act (FAA) or the Texas Arbitration Act (TAA). Nothing in the record indicates that the Representation Agreement involves interstate commerce. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) ("The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce."). Accordingly, we conclude that the TAA governs.

to arbitrate. TEX. CIV. PRAC. & REM. CODE ANN. § 171.023(a) (West, Westlaw through 2017 1st C.S.). Once a court finds an enforceable arbitration agreement, a "strong presumption" favoring arbitration arises "such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor of arbitration." *In re Poly–Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). Courts determine whether an enforceable agreement to arbitrate exists by applying "ordinary principles of state contract law." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). Generally, "parties must sign arbitration agreements before being bound by them." *Id*. (quoting *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding)). But the question of who is actually bound by an arbitration agreement is essentially "a function of the intent of the parties, as expressed in the terms of the agreement." *In re Rubiola*, 334 S.W.3d at 224 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003)). We make this determination by interpreting the agreement as a whole in accord with the plain and ordinary meaning of the language the parties chose to use in the document. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). "And we assign terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Id*. at 893. Whether an agreement to arbitrate is enforceable is a question of law that we review de novo. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

In *Godt*, a patient telephoned the Firm to discuss retaining it to represent her in a medical malpractice case stemming from complications following hip surgery. 28 S.W.3d at 734. The Firm dispatched a paralegal to the patient's home to obtain her

6

signature on a representation agreement. *Id*. According to the patient, the Firm failed to investigate or pursue her medical malpractice claim and withdrew from representing her shortly before limitations expired. *Id*. The patient sued the Firm and asserted claims for negligence, gross negligence, fraud, misrepresentation, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices Act. *Id*. at 735. The trial court granted the Firm's motion to compel arbitration and stayed the patient's lawsuit pending resolution by arbitration. *Id*. We granted the patient mandamus relief and directed the trial court to vacate its previous order and sign an order denying the Firm's motion to compel arbitration. *Id*. at 740. In *Godt* we addressed both of the statutory provisions that Garcia relies on. *Id*. at 738–39.

The barratry statute provides that "[a] contingent fee contract for legal services must be in writing and signed by the attorney and client." TEX. GOV'T CODE ANN. § 82.065(a). In *Godt*, we held:

> It is undisputed that the agreement was signed only by Godt; neither Henry nor anyone from his office signed the agreement. We hold, therefore, that Henry may not enforce the arbitration agreement because it fails to comply with the requirements set forth in the government code. We do not address the issue of whether Godt may enforce the agreement.

28 S.W.3d at 738.

The TAA provides:

(a) This chapter does not apply to:

 . . .

    (3)    a claim for personal injury, except as provided by Subsection (c);

 . . .

7

(c)     A claim described by Subsection (a)(3) is subject to this chapter if:

      (1)     each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and

      (2)     the agreement is signed by each party and each party's attorney.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.002.   In *Godt* we held that the patient's legal malpractice claim constituted a personal injury claim under section 171.002 of the Texas Civil Practice and Remedies Code.   28 S.W.3d at 738–39.

**C.     Analysis**

We conclude that *Godt* does not control in this case for two reasons.   First, unlike in *Godt*, the Representation Agreement in this case was eventually countersigned by an attorney with the Firm.   Further, in this case the Firm provided legal services by filing suit on Garcia's behalf and pursuing her claims.   The Firm did not file suit on the patient's behalf in *Godt*.   Therefore, for purposes of section 82.065(a) of the Texas Government Code, *Godt* is distinguishable.   Second, the Firm's plea in intervention seeking attorney's fees cannot be classified as a personal injury claim under section 171.002 of the Texas Civil Practice and Remedies Code because it is premised on provisions in the Representation Agreement and not on a personal injury.   *Cf. id.*; *see also Law Office of Thomas J. Henry v. Cavanaugh*, No. 05-17-00849-CV, 2018 WL 2126936, at *6 (Tex. App.—Dallas May 7, 2018, pet. denied) (holding that a lawsuit to recover attorney's fees is not based on a claim for personal injury, and therefore, section 171.002(a)(3) is not applicable).

Garcia based her motion to stay arbitration exclusively on *Godt* and its interpretation of the barratry statute and the TAA. Thus, Garcia failed to show that there was not an agreement to arbitrate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.023(a). Therefore, we conclude that the trial court abused its discretion in granting Garcia's motion to stay arbitration. We sustain the Firm's sole issue.

## III. CONCLUSION

We reverse the trial court's order staying arbitration and remand for further proceedings.

LETICIA HINOJOSA
Justice

Delivered and filed the
21st day of February, 2019.