**Opinion issued August 8, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00923-CV

————————————

**BROCK SERVICES, LLC, Appellant**

**V.**

**EUSTOLIA DARAIT MONTELONGO, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-30236**

---

## MEMORANDUM OPINION

Eustolia Montelongo brought suit against her former employer, Brock

Services, LLC, alleging that she was subjected to harassment based on her sex and

retaliation for having reported the harassment.

Brock moved to compel arbitration. The trial court denied the motion and Brock appeals, contending that it proved Montelongo entered into a valid arbitration agreement with Brock and that Montelongo's claims fall within the scope of that agreement. We reverse and remand.

## BACKGROUND

In March 2017, Brock offered to hire Montelongo as an industrial insulation installer. Brock conditions each offer of employment, including Montelongo's, on the prospective employee's agreement to adhere to Brock's Dispute Resolution Policy. Montelongo received a written copy of the Dispute Resolution Policy and an electronic copy of its Employee Handbook as part of the hiring process.

The two-page Dispute Resolution Policy begins with a sentence written in Spanish, centered on the page and printed in boldfaced, capital letters, which translated into English, provides the following warning: "If you cannot read and understand this information in English, you must request this information in Spanish."

The Dispute Resolution Policy then proceeds to explain that it

creates a mutual obligation to arbitrate between Brock Holdings III, Inc., its affiliates, subsidiaries and parent (the "Brock Group"), and all employees of The Brock Group (collectively, The Brock Group and employees of The Brock Group are herein referred to as the "Parties"), and is for the express benefit of all other persons or entities included in the definition of the term "Company" and "Company's Customer" (as both terms are hereinafter defined). Each, every, any and all claims,

2

disputes and/or controversies now existing or later arising between or among the Parties, or between or among the employees of The Brock Group and any other person or entity constituting the Company or a Company Customer, whether now known or unknown, arising out of or related to employment or termination of employment with The Brock Group shall be resolved only through final and binding arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and not by way of court or jury trial.

The Agreement specifies that it covers claims including those alleging

termination[] or harassment and claims arising under the . . . Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and federal, state, or other statues and/or ordinances, if any, addressing the same or similar subject matters, and all other federal, state, or other statutory and common law claims including retaliation claims (but excluding other workers' compensation and unemployment insurance claims).

With respect to these types of claims, the Dispute Resolution Policy further declares:

Nothing in this Dispute Resolution Policy shall be deemed to preclude a party from filing or maintaining a charge with the Equal Employment Opportunity Commission or the National Labor Relations Board or bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

On her hiring date, Montelongo signed the Dispute Resolution Policy and an acknowledgment of electronic delivery of Brock's Employee Handbook. Page 70 of the Handbook addresses the Dispute Resolution Policy, explaining that it

is a binding agreement and acceptance and/or continuation of employment with the Company constitutes knowing and voluntary acceptance and agreement to the terms and condition[s] of the Dispute Resolution Policy.

The Handbook's acknowledgement page includes notice "that the policies, rules and benefits described in the Handbook are subject to change at the sole discretion of the Company at any time." However, the Handbook expressly excepts the Dispute Resolution Policy from this notice, which, the Handbook declares, is "a distinct and separate agreement from all other modifiable Company Policy provisions" that "may not be changed or modified by The Brock Group, except with the acceptance of the employee after 60 days' notice."

With respect to fees and costs, the Dispute Resolution Policy provides:

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. If an employee brings a claim, dispute, or controversy subject to this Dispute Resolution Policy, the employee bears the responsibility for JAMS's initial filing or case management fee. All other fees associated with the arbitrator or arbitral forum shall be paid for by a company in The Brock Group, if it is a party to the arbitration, or by the applicable person(s) or entity(ies) constituting the Company or Company's Customer that is otherwise a party to the arbitration, if no company in The Brock Group is a party to the arbitration.

Both the Dispute Resolution Policy and the section of the Handbook discussing it advise the prospective employee to consult with legal counsel regarding the legal consequences of the Dispute Resolution Policy.

4

Montelongo alleges that the following events began shortly after she was hired and form the basis of her claims against Brock. Montelongo's supervisor would sexually harrassing her, making provocative comments about her body and propositioning her. Montelongo complained to Brock about the harassment. The company conducted an investigation but did not inform Montelongo of the outcome. After making the complaint, Montelongo, claims, she was subjected to harassment and retaliation by her new supervisor and male co-workers, and she was wrongly denied a promotion and raise. Montelongo filed a claim with the Texas Workforce Commission alleging sexual harassment and retaliation. When Brock learned of the TWC claim, it placed Montelongo on unpaid leave. Montelongo alleges that due to the harassment and mistreatment, she reached the point that she felt she had no alternative but to leave her employment.

Montelongo received a right-to-sue letter from the TWC and brought this suit against Brock. Brock answered and moved to compel arbitration.

## DISCUSSION

Brock contends that the trial court erred in denying its motion to compel arbitration because it proved the validity of the arbitration agreement set forth in its Dispute Resolution Policy and that Montelongo's claims come within the agreement's scope. In the trial court, Montelongo opposed the motion with

5

arguments that no valid arbitration agreement existed and alternatively, that the agreement is unenforceable.

## I. Standard of Review

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *In re Houston Progressive Radiology Assocs.*, 474 S.W.3d 435, 442–43 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Under this standard, we defer to the trial court's factual determinations if the evidence supports them, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 922 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

The parties agree that the Federal Arbitration Act governs the Agreement. *See* 9 U.S.C. §§ 1–16; *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Under the FAA, a party seeking to compel arbitration must show that (1) a valid, enforceable arbitration agreement exists and (2) her claims fall within the agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *In re Provine*, 312 S.W.3d 824, 828 (Tex. App.–Houston [1st Dist.] 2009, orig. proceeding).

Whether a valid arbitration agreement exists is a legal question. *In re D. Wilson Constr. Co.*, 196 S.W.3d at 774, 781 (Tex. 2006); *Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 208 (Tex. App.—Houston [1st Dist.] 2013, no

pet.). We apply ordinary contract principles in interpreting an agreement to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Valerus Compression Servs.*, 417 S.W.3d at 208. "We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Valerus Compression Servs.*, 417 S.W.3d at 208. "No single provision taken alone will be given controlling effect." *Id.*

## II.    An Arbitration Agreement Exists Between Brock and Montelongo

Brock contends that the trial court erred in denying its motion to compel arbitration based on any of Montelongo's challenges against the formation of the arbitration agreement. Under contract law, the determination of a meeting of the minds, and thus offer and acceptance, is based on an objective standard. *DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.). We consider only the parties' objective manifestations of assent, not their subjective states of mind. *Palavan v. McCulley*, 498 S.W.3d 134, 141 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Adams v. Petrade Int'l., Inc.*, 754 S.W.2d 696, 717 (Tex. App.—Houston [1st Dist.] 1988, writ denied)). The law presumes that the party knows and accepts the contract terms. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (per curiam).

The strong presumption favoring arbitration arises "only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson*, 128 S.W.3d at 227. Once a movant proves the existence of a valid arbitration agreement, though, courts must resolve all doubts regarding the agreement's scope in favor of arbitration. *In re Kellogg Brown & Root*, 166 S.W.3d at 737; *see In re D. Wilson Constr.*, 196 S.W.3d at 783 (instructing that courts "should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue" (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995) (per curiam) (orig. proceeding)).

If the party moving to compel arbitration establishes that a valid arbitration agreement encompasses the nonmovant's claims, the burden shifts to the nonmovant to establish a defense. *In re Provine*, 312 S.W.3d at 829. Absent a defense, the trial court has no discretion to deny the motion. *See id.*

A. **The circumstances surrounding Montelongo's execution of the arbitration agreement do not prevent it from binding her to its terms.**

Montelongo argued that her "signature is not enough" to show that she agreed to arbitrate her claims because her primary language is Spanish and she did not

understand the legal effect of agreeing to arbitration.[1] However, absent proof of mental incapacity, fraud, misrepresentation, or deceit, "a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *see In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 877 (Tex. App.—El Paso 2005, orig. proceeding). Texas courts have consistently found arbitration agreements enforceable in the face of similar complaints. *See In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 163 (Tex. 2006) (holding that an employee who signed an acknowledgment that he received a summary of the company's dispute resolution policy and accepted the company's offer of employment, received notice of and accepted its arbitration agreement's terms as a matter of law); *In re Big 8 Food Stores*, 166 S.W.3d at 878 ("Illiteracy thus does not relieve a contracting party of the consequences of his agreement."); *see also Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1986, no writ) (holding that party bound by contract he signed despite his inability to read, write, or speak English).

---

[1] Montelongo does not address the significance of the sentence written in Spanish at the beginning of the Dispute Resolution Policy, which instructs her to ask for the policy in Spanish if she was unable to read it in English. Nor does she account for the policy language advising her to consult with a lawyer to better understand the legal consequences of signing the arbitration agreement.

**B.**     **Brock was not required to sign the arbitration agreement.**

Montelongo also claimed that the arbitration agreement was not binding because it has only her signature and was not signed by a Brock representative. This claim also is unavailing. The FAA does not require parties to sign an arbitration agreement. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (citing 9 U.S.C. § 3). Texas law recognizes that a contract signed by only one party can be effective as long as the other party demonstrates acceptance of its acts, conduct, or acquiescence in the terms of the contract. *See Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 285 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *DeClaire*, 260 S.W.3d at 44). Montelongo does not identify any conduct by Brock that would call its acceptance of the arbitration agreement into question. Thus, this claim does not support the trial court's denial of Brock's motion to compel arbitration.

**C.**     **The arbitration agreement did not need a conspicuous jury waiver to be valid.**

Montelongo attacked the arbitration agreement based on its lack of a conspicuous jury waiver,[2] but its absence does not preclude enforcement of the

---

[2]     The first page of the agreement declares that the parties agree all claims arising out of the employment relationship "shall be resolved only through final and binding arbitration, pursuant to the [FAA], and not by way of court or jury trial." Montelongo's complaint ostensibly concerns the lack of conspicuousness, not the lack of content.

arbitration agreement. "Arbitration is an agreement to resolve disputes out of court in the first instance, not an agreement to waive a particular constitutional right available within the judicial process." *Chambers v. O'Quinn*, 305 S.W.3d 141, 149 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "[A] party . . . waives its rights to recourse in the courts" when it enters into an arbitration agreement. *Id.* An agreement to arbitrate employment-related disputes and waive the right to trial necessarily includes a waiver of the right to trial by jury.

D. **The arbitration agreement is not illusory because any modification requires the approval of both parties.**

Montelongo also contended that the arbitration agreement is illusory, because the Employee Handbook's disclaimer provides "that the policies, rules and benefits described in the Handbook are subject to change at the sole discretion of the Company at any time." The trial court could not properly deny the motion to compel arbitration based on that disclaimer, though, because the Handbook makes clear that the disclaimer does not apply to the arbitration agreement. The handbook sets the Dispute Resolution Policy apart from other policies addressed in the handbook, declaring that it is "a distinct and separate agreement from all other modifiable Company Policy provisions" that "may not be changed or modified by The Brock Group, except with the acceptance of the employee after 60 days' notice."

"An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*,

11

324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) (citing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2004) (orig. proceeding) (per curiam)). Brock's Employee Handbook expressly distinguishes the Dispute Resolution Policy from the other policies it addresses, requiring 60 days' notice of any proposed change or modification and the employee's acceptance before it can be made. *See id.* Because the arbitration agreement's terms cannot be changed without the consent of both Brock and its employees, it is not illusory.

## CONCLUSION

We hold that the trial court erred in denying Brock's motion to compel arbitration. We therefore reverse the judgment and remand the case for further proceedings consistent with this opinion.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.