

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-25-00114-CV
_____

### PATRICK K. WILLIS COMPANY, INC. D/B/A AMERICAN RECOVERY SERVICES, Appellant

### V.

### YVONNE LAWTON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JIMMIE LAWTON, Appellee

On Appeal from the 276th District Court
Morris County, Texas
Trial Court No. 28106

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of Appellant, Patrick K. Willis Company, Inc. d/b/a American Recovery Systems (ARS), and Texas Collateral Adjusters, LLC's (TCA),[1] motions to compel arbitration and stay proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.016, 171.098(a)(1) (Supp.) (allowing interlocutory appeal of denial of motions to compel arbitration). Jimmie Lawton bought a truck through a financing agreement that contained an arbitration clause. The dealership, Patterson Nissan, assigned the agreement to Santander Consumer USA, Inc. (Santander). Santander initiated repossession and contracted with ARS. ARS contracted with TCA. Jimmie alleged that a confrontation with TCA employees during the repossession caused emotional injury and economic loss when his truck was taken and later sold despite his timely payments. Jimmie initiated arbitration against Santander, but Jimmie and his wife, Yvonne Lawton,[2] sued ARS and TCA in district court. ARS, a nonsignatory to the agreement, moved to compel arbitration. The trial court denied the motion to compel arbitration, as well as ARS's motion requesting that, even if the case against ARS remained in court, the case should be stayed pending the conclusion of the Santander arbitration.

On appeal, ARS argues (1) it can compel arbitration as an agent of Santander, a signatory-via-assignment to the arbitration agreement; (2) the delegation clause requires an

---

[1]TCA did not join this interlocutory appeal.

[2]Yvonne, did not sign the agreement, but she is a party to the lawsuit with ARS and TCA.

arbitrator to determine arbitrability of the claims against ARS; (3) Jimmie's claims fall within the scope of the arbitration clause; and (4) the Lawtons' claims should be stayed pending arbitration.

We conclude that ARS failed to establish that it was an agent of Santander, and that the trial court did not abuse its discretion in denying the motion to stay. We affirm.

## I.     Applicable Facts

On August 12, 2021, Jimmie bought a truck from Patterson Nissan in Longview, Texas. Patterson Nissan loaned Jimmie a portion of the purchase price. The agreement between Jimmie and Patterson Nissan was therefore both a purchase agreement and a finance agreement. The agreement is in the record. Patterson Nissan assigned the agreement to Santander on the same date that Jimmie agreed to and signed the agreement. The agreement between Patterson Nissan and Santander is not part of the record. Jimmie alleged that, at all times, he remained current on the truck note and that he kept a record of every payment. The Lawtons attached checks to their petition for every month from September 2021 to May 2023. The Lawtons alleged that, after Jimmie's truck was repossessed and sold, they learned that Santander had erroneously credited Jimmie's payments to another account. The Lawtons contended the repossession and subsequent sale of Jimmie's truck should never have happened.

ARS contends that the Lawtons' case, as pled, belongs in arbitration. In other words, for present purposes, ARS accepts the Lawtons' factual allegations as true.

The Lawtons alleged that the wrongful repossession began with a loud knock on their door early on the morning of May 24, 2023. It was a TCA man. Yvonne answered. She called for Jimmie. He joined her on the front porch. There was an argument. "Suddenly and without

3

warning, a second man from TCA approached [Jimmie] from the south side of [the Lawtons'] house and third man from TCA came out from the darkness near the north side of [the Lawtons'] home." Both men approached aggressively and were armed. Jimmie protested that he was current on the truck payments, and could show it if they would let him get his things out of the truck, including the receipts he kept in the glove box. The men from TCA let Jimmie get his things. He showed them the receipts. One of the TCA men made a phone call. "After a few minutes, the man informed [Jimmie] that he was instructed to repossess the vehicle and told [Jimmie] to contact Santander regarding the disputed installment payments."

The Lawtons alleged not only that the repossession never should have occurred, but also that it was done in a way that gave rise to their claims against ARS for breach of the peace, unlawful conversion, assault, negligence, gross negligence, intentional infliction of emotional distress, and trespass.

Jimmie died on May 16, 2025, the day after filing suit. Yvonne now pursues the claims set forth in the Lawtons' original petition in her individual capacity and as representative of the Estate of Jimmie Lawton.

The agreement between Jimmie and Patterson Nissan contains an arbitration provision. The arbitration provision defines "you" and "your" as the buyer, Jimmie, and "we," "us," and "our" as the seller, Patterson Nissan and its assignees. The provision further describes covered disputes as those "between you and us or our employees, agents, successors or assigns."

To claim the benefit of that agreement and that arbitration provision, ARS joined a motion to compel arbitration filed by TCA. Both the TCA motion and the ARS joinder

4

submitted the same agreement between Patterson Nissan and Jimmie that was attached to the Lawtons' petition. In addition, ARS submitted a reply brief in the trial court, which attached sworn copies of its 2016 master service agreement with TCA and a May 6, 2023, "Order of Repossession" from ARS to TCA.

In TCA's motion to compel arbitration, TCA and ARS (via joinder) sought to abate the case pending the resolution of the ongoing arbitration with Santander of the Lawtons' claims.

The trial court heard the motions to arbitrate and for abatement on October 10, 2025. No additional evidence was offered at that hearing.

On October 15, 2025, the trial court signed an order denying ARS's requests for arbitration and abatement. By that instrument, the trial court ordered for discovery to run parallel with the arbitration against Santander. Neither party requested findings of fact and conclusions of law. ARS then filed this interlocutory appeal.

## II. Whether ARS Can Compel the Estate of Jimmie Lawton to Arbitrate

The only party ARS seeks to compel to arbitrate is the Estate of Jimmie Lawton. Yvonne asserts individual claims. ARS does not seek to compel Yvonne to arbitrate her claims. There is no arbitration agreement signed by both ARS and Jimmie.[3] Instead, ARS seeks to claim the benefit of Jimmie's agreement with Patterson Nissan. ARS is not a signatory to that agreement. ARS contends that Santander stepped into the shoes of Patterson Nissan and that, as pertains to

---

[3]Generally, "an arbitration clause cannot be invoked by a non-party to the arbitration contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000) (Dennis, J., dissenting)). "But sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (footnote omitted) (citation omitted).

these claims, ARS was the "agent of Santander." The parties do not dispute the applicability of the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 2.

### A. Applicable Law and Standard of Review

"A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope." *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding).

"Courts decide the first inquiry—whether an agreement to arbitrate exists." *Cerna as Next Friend of R.W. v. Pearland Urb. Air, LLC*, 714 S.W.3d 585, 588 (Tex. 2025), *cert. dismissed*, 146 S.Ct. 1051 (2026). "Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the *trial court*, not the arbitrator, which means the determination is reviewed de novo . . . ." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018) (emphasis added). "Courts decide challenges 'to the very existence of an agreement to arbitrate.'" *Cerna*, 714 S.W.3d at 589 (Tex. 2025) (quoting *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009) (orig. proceeding)).

"Arbitration agreements are interpreted under traditional contract principles." *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). "Because arbitration is a matter of contract—'a matter of consent, not coercion'—parties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) (quoting *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W3d 518, 521 (Tex. 2019)).

6

"A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Only after that burden is carried does the burden shift to the opposing party regarding arbitration avoidance defenses. *Id.*

Even under de novo review of gateway existence questions under contract principles, "we defer to the trial court's fact findings" so long as there is support in the record. *MacIvor v. Zuehl Airport Flying Cmty. Owners Ass'n, Inc.*, No. 06-24-00074-CV, 2026 WL 472471, at *3 (Tex. App.—Texarkana, 2026, no pet.) (mem. op.).[4] "When, as here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by evidence are implied." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

---

[4]In a decision after *Jody James Farms*, but before *Cerna*, the Texas Supreme Court decided questions of the existence of an arbitration agreement de novo, while at the same time using abuse of discretion (but with deference to the trial court's actual and implied fact-findings) to assess facts regarding whether an arbitration agreement had been formed. *See, e.g.*, *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021).

Concerning the potential nuance in the standard of review, the parties do not contend that any difference between de-novo-with-deference and de-novo-plus-abuse-of-discretion-with-deference is outcome determinative here. Either way, there is deference to the trial court's implied fact findings. Further, if the trial court's actual and implied fact findings are to be shown no deference whatsoever, the outcome would remain the same because, under that circumstance, we would reach the same outcome as the trial court.

*Aerotek* is illustrative of what is required to overcome deference to the trial court. *See id.* There, terminated employees asserting employment claims sought to avoid arbitration. *Id.* at 202. The employer's online hiring documentation process included an arbitration agreement. *Id.* at 201. But the employees denied that they had electronically signed the arbitration provision. *Id.* The trial court believed the employees. *Id.* at 202. Deference to that finding was overcome because "Aerotek's evidence showing the security procedures its hiring application used to verify that a candidate electronically signed his [arbitration agreement] was uncontroverted." *Id.* at 206. Further, "[u]nder [the statutory] framework for electronic-signature attribution, once Aerotek proved its security procedures, the burden shifted to the Employees to demonstrate how their electronic signatures could have wound up on the [electronic arbitration agreement] without their having placed them there themselves. Mere denials do not suffice." *Id.* at 209.

**B.    Analysis**

On de novo review, with deference to the trial court's implied fact-findings, we determine that ARS did not carry its burden to show the existence (on its agency theory) of an arbitration agreement between itself and Jimmie.

To begin with, what does it mean to be an "agent" in this context, or rather in this case? One possibility is that Jimmie and Patterson Nissan came to their own agreed understanding of the word "agent" as reflected in their agreement.[5]   But that is not how ARS presented the question to the trial court.  At the hearing, TCA framed the question this way:  "Now, the agency standard is that the nonsignatory must demonstrate that it was subject to the principal signatory's control *and* authorized to act as its agent."  (Emphasis added).  TCA's motion, which ARS joined, cited *Jody James Farms*,[6] and urged, "Under Texas law, a non-signatory may invoke an arbitration clause if it can establish an agency relationship with a signatory of the contract." TCA's motion presented the question as turning on "authoriz[ation]" by the signatory and the signatory's "control" over the non-signatory.  ARS's joinder did likewise, again citing *Jody James Farms*,[7] and urging that these principles are "well-established."[8]

Further, as noted above, the agreement between Jimme and Patterson Nissan describes "you" and "us" as those two parties.  "[A]gents" is used as follows:

---

[5]*See, e,g., Jody James Farms*, 547 S.W.3d at 635 ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms.").

[6]*See* 547 S.W.3d at 633.

[7]*Id.*

[8]*See also G.T. Leach Builders, LLC*, 458 S.W.3d at 524 ("We have recognized, however, that in some circumstances a non-signatory can be bound to, *or permitted to enforce*, an arbitration agreement." (emphasis added)).

> *[A]ny claim or dispute*, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), *between you and us or our employees, agents, successors or assigns*, which arises out of or relates to . . . this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) *shall, at your or our election, be resolved by neutral, binding arbitration* and not by a court action.

(Emphasis added). As can be seen, and as far as the contractual language goes, "agents" is part of the discussion regarding what claims fall within the scope of the arbitration provision. As for the different question of who can invoke arbitration, the provision limits that to "you" or "our." ARS does not claim to fit within "our," at least not solely based on the text of the agreement between Jimmie and Patterson Nissan. Consequently, there was and is reason for ARS to resort to the legal doctrine of agency in *Jody James Farms* instead of the contractual language.

Therefore, given how the question was framed in this case, we examine whether Santander authorized and controlled ARS as regards Jimmie's claims.[9]

The trial court's denial of arbitration means that the trial court found ARS's evidence on this point lacking. The trial court's decision is supported by the record. First, though ARS bore the burden, and had access to the documents in question, there are two big holes in ARS's proof. ARS did not provide the trial court with its overarching agreement with Santander. Nor did ARS provide the trial court with the correspondence between Santander and ARS specifically concerning Jimmie. As a result, those documents are not in the record for our review. Second, the documents ARS did provide the trial court backfire on ARS. The repossession order from ARS to TCA requests certain photographs of the vehicle desired by Santander once the vehicle

---

[9]*See Jody James Farms*, 547 S.W.3d at 635 ("To establish an agency relationship, a non-signatory must show it was subject to the principal signatory's control *and* authorized to act as its agent." (emphasis added)).

9

has been "secured." But the master service agreement between ARS and TCA states that TCA is an independent contractor of ARS. That agreement states, "[ARS] shall have no right to direct or control [TCA] as to the specific means or manner in which [TCA] attempts to or does recover possession of any collateral pursuant to Assignments from [ARS]."

It would have been reasonable for the trial court to believe that if Santander had exerted express contractual "means or manner" control over ARS, then ARS would have demanded that same contractual control over TCA (so as to be able to satisfy the contractual demands placed on ARS by Santander). But the record before the trial court, and us, shows the opposite. At least in terms of the contractual language, TCA was an independent contractor of ARS. Consequently, the record supports the trial court's implied holdings that ARS did not carry the burden of showing that Santander authorized and controlled ARS regarding the allegations made by Jimmie.

Likewise, the trial court implicitly found that statements in the Lawtons' petition did not constitute binding judicial admissions[10] that ARS was the agent of Santander (as "agent" was used by ARS in furtherance of its effort to compel arbitration). First, the petition predated the motion to compel arbitration and the hearing on arbitration. Thus, the petition does not reflect a deliberate choice by the Lawtons to allege agency in the fashion ARS would later use it. Second, the petition, on its face, spoke rather colloquially; the petition speaks of Santander "hir[ing]" ARS, and in the same sentence, as ARS being Santander's "repossession agent." The same page of the petition also alleges that ARS "provide[d] repossession portfolio management solutions"

---

[10]*See PPG Indus. v. JMB/Houston Ctrs. Partners Ltd., P'ship*, 146 S.W.3d 79, 95 (Tex. 2004) ("clear, deliberate and unequivocal").

as an "aggregator" that "typically does not perform any physical vehicle repossessions."[11] In addition, the Lawtons' alleged that, rather than ARS operating unquestioningly under the control of Santander, ARS had a duty "to ensure that Santander had a lawful right to repossess [Jimmie's] vehicle," and that ARS had its own "non-delegable" duty to refrain from breaching the peace.

We deny ARS's first issue and therefore do not reach its second and third issues.[12]

## III. The Trial Court Did Not Abuse its Discretion in Denying the Stay

In its fourth issue, ARS argues that the trial court abused its discretion by denying to stay the Lawtons' claims against ARS pending the arbitration between the Lawtons and Santander.

We find no abuse of discretion in the trial court's decision.

### A. Substantive Law

"The FAA generally requires courts to stay lawsuits involving arbitrable issues *if a party with the right to arbitration* seeks a stay pending arbitration of those issues." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016) (per curiam) (emphasis added) (citing 9 U.S.C. § 3).

However, when the "same issues" are pending in both arbitration and in court, a party to the court proceeding (but not arbitration) may obtain a stay of the litigation. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding). This is "to ensure that an

---

[11]In the same vein, the petition speaks of ARS "contract[ing]" for the physical recovery, and of TCA being in the "employ[]" of ARS.

[12]ARS asserted, via its second issue, that it was for the Arbitrator to decide matters of "arbitrability," and via its third issue, that Jimmie's claims fell within the scope of the arbitration agreement. In its reply brief, however, ARS conceded that analysis, by this Court, of whether an arbitration agreement exists should come first.

issue two parties have agreed to arbitrate is not decided instead in collateral litigation." *Id.* at 196. In the introductory discussion of that decision, the Texas Supreme Court summarized the holding this way: "to the extent these separate proceedings overlap, we hold the litigation must be stayed until the arbitration is completed." *Id.* at 187.

The only decision of this Court citing *In re Merrill Lynch Trust* concerned whether estoppel principles required arbitration, not whether a trial court case should be stayed in favor of arbitration. *See Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App.—Texarkana 2014, no pet.).

ARS relies on a decision of our sister court which relied both on *In re Merrill Lynch Trust* and federal caselaw. *See In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (orig. proceeding) (citing *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)). The Lawtons cite to *In re Devon Energy* as well. *In re Devon Energy* held that, "[t]he FAA's mandatory stay applies to a non-signatory to an arbitration agreement if (1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are 'inherently inseparable,' and (3) the litigation has a 'critical impact' on the arbitration." *Id.* (quoting *Waste Mgmt.*, 372 F.3d at 343).[13] Under this approach, the emphasis is on whether the arbitration rights

---

[13]The other case relied on by ARS did not apply the *In re Devon Energy* test advanced by ARS and decided the issue of stay in the alternative. *See Earth Motorcars, LLC v. Glowka*, No. 04-23-00166-CV, 2024 WL 2735033, at *6 (Tex. App.—San Antonio May 29, 2024, no pet.) (mem. op.) ("even if Glowka's claims involving Moreno and Garcez were not subject to the Agreement to Arbitrate"). It appears that *Earth Motorcars* used an expansive reading of *In re Merrill Lynch Trust* that is inconsistent with the *In re Devon Energy* approach advocated by ARS. *See id.* (citing *In re Merrill Lynch*, 235 S.W.3d at 195) (describing *In re Merrill Lynch Trust* as "holding that pursuant to the FAA, *any* non-arbitrable claim should be stayed while the arbitration proceeds." (emphasis added)).

of a signatory are impaired: "Courts must focus on preserving the right to meaningful arbitration rather than addressing potential harm to the rights of a non-signatory." *Id.* (citing *Waste Mgmt.*, 372 F.3d at 343). The Lawtons cite to *In re Devon Energy* as well.

Accordingly, for purposes of this matter, we apply the *In re Devon Energy* approach.[14]

The facts of *In re Devon Energy* are instructive. There, two men, Ferris and Ellison, with the approval of Russian authorities, set about to form a new Russian oil company. *Id.* at 545–47. Ferris and Ellison recruited investors, among them predecessors of Devon Energy. *Id.* Several years later (and skipping a few transactions not pertinent here), Ferris and Ellison were both pursuing Devon Energy for allegedly failing to pay what was owed to them from Devon Energy's receipts from the Russian oil company; Ferris in litigation, Ellison in arbitration. *Id.* at 546. "Both Ferris's and Ellison's rights to distributions are based on the same payout, which is determined by the same receipt and payment of funds by Devon and its appropriate maintenance of the payout account." *Id.* On those facts, the *Devon Energy* court found that a stay was warranted: "Ferris's litigation and Ellison's arbitration seek to establish the same core issue, that is, the time of payout. The claims are based on the same investment in and the same distributions from the same joint venture." *Id.* at 549.

### B. Standard of Review

In 2010, the Texas Supreme Court reviewed a trial court decision on whether to stay non-signatory court cases under the mandamus abuse of discretion standard. *In re Merrill Lynch &*

---

[14]"The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) (quoting *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring)).

13

*Co., Inc.*, 315 S.W.3d 888, 893 (Tex. 2010) (per curiam) (orig. proceeding). There, the Texas Supreme Court found an abuse of discretion because the claims were "identical." *Id.*

ARS raises the issue of stay via interlocutory appeal, and Yvonne does not contest its ability to do so. *See id.*, at 891 n.3; 9 U.S.C. § 16; TEX. CIV. PRAC. & REM. CODE ANN. § 51.016. Both parties point us to federal cases using an abuse of discretion standard of review, on interlocutory appeal, regarding non-signatory stay decisions. *See, e.g.*, *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (per curiam) (quoting *Waste Mgmt.*, 372 F.3d at 343) (listing the factors *In re Devon Energy* drew from *Waste Mgmt.*).

The general rule is that "[w]e review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) (citing *Henry*, 551 S.W.3d at 115). The Texas Supreme Court was not speaking specifically to a trial court decision regarding a stay decision pertaining to nonsignatories. *See id.* Nonetheless, we look to the Texas Supreme Court's general rule in this field and apply it in light of the arguments of the parties.

Under the general rule of arbitration abuse of discretion review, "[w]e defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115.

**C.    Analysis**

The record supports the trial court's decision regarding stay.

14

ARS does not contend that the trial court applied the wrong legal test to the stay decision. Indeed, ARS cited *In re Devon Energy* to the trial court. Therefore, we turn to the factual evidence.

As above, the evidence in the record is sparse. ARS did not supply the trial court with its agreement with Santander or its correspondence with Santander regarding the Lawtons' repossession. ARS did supply the trial court with its contract with TCA and the "Order of Repossession." Further, though ARS indicated that an arbitration with Santander is ongoing, ARS did not provide the trial court with sworn copies of pleadings in that arbitration nor ask that the trial court take judicial notice of them.

Under the *In re Devon Energy* approach, the focus is on whether a signatory's rights to arbitration are impaired. Without the arbitration pleadings, the trial court was left without a way to fully assess the application of the three *In re Devon Energy* factors as they apply to Santander's rights. The arguments and briefs of the parties contain hints about what has been alleged and what is happening in arbitration. But the trial court was not provided with a way to verify that. The *Devon Energy* court, in contrast, was able to assess what was alleged in arbitration: "Ellison then asserted these same claims in arbitration." *In re Devon Energy Corp.*, 332 S.W.3d at 549.

Yvonne asserts her own claims against ARS arising from the events of May 24, 2023. In the trial court, TCA and ARS asserted generally and briefly that the claims in the Lawtons' petition are the same as the pending arbitration involving Santander. But Yvonne's claims present their own operative facts directly associated with the manner in which repossession

15

occurred, independent of those of Jimmie's estate concerning the application of his truck payments.

Further, we have now determined that the trial court did not err in holding that the claims of the Estate of Jimmie Lawton against ARS should remain in court.

Lastly, the claims against TCA are and will remain in the trial court because TCA did not appeal the trial court's order. At the time of its ruling denying stay to ARS and TCA, the trial court could not know if both, either, or neither would appeal. Time has proven the trial court prescient regarding TCA, and the now-unchallenged determinations that Jimmie's claims against TCA belong in court and should not be stayed add to the conclusion that Jimmie's claims against ARS likewise belong in court and should not be stayed.

All things considered, the trial court acted within its discretion by finding that ARS had not established all three *In re Devon Energy* factors. *See In re Devon Energy Corp.*, 332 S.W.3d at 548 ("and").

We deny ARS's fourth issue.

## IV.     Conclusion

We affirm the trial court's order.


Jeff Rambin
Justice

Date Submitted:     April 22, 2026
Date Decided:     May 6, 2026

16